UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- x
                                         :

**UNITED STATES OF AMERICA**      :

**- v -**      :      22 Cr. 644 (JSR)

**LUCHA EL POR LIBERTAD**,      :

                Defendant.  :
------------------------------------------------- x

## DEFENDANT LUCHA EL POR LIBERTAD'S
## MOTIONS IN LIMINE

 

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
**LUCHA EL POR
LIBERTAD**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8735

**ZAWADI BAHARANYI, ESQ.**
**AMANDA MAYO, ESQ.**
<u>Of Counsel</u>

TO:  **DAMIAN WILLIAMS, ESQ**.
      United States Attorney
      Southern District of New York
      One. St. Andrew's Plaza
      New York, New York 10007
      Attn:  **ASHLEY NICOLAS, ESQ.**
             **MADISON REDDICK SMYSER, ESQ.**
             **SARAH MORTAZAVI, ESQ.**
             Assistant United States Attorneys

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**............................................................................................................... 1

**ARGUMENT** .................................................................................................................... 2

1. The Court Should Preclude the Government from Introducing Evidence of
   Lucha's Massachusetts Arrest on July 3, 2021. ........................................................... 2

   A.  Lucha's July 3, 2021 Massachusetts arrest. .......................................................... 2

   B.  The Massachusetts incident is irrelevant and inadmissible under Rule 402. ....................... 4

   C.  The Massachusetts incident is inadmissible under Rule 403. ............................................. 6

   D.  The Massachusetts incident should be precluded as improperly noticed
       under Rule 404(b). ............................................................................................. 10

2. The Court Should Preclude the Government from Introducing Evidence of Every Firearm
   Allegedly Purchased by Keith Vereen in South Carolina. ............................................ 11

3. The Court Should Preclude the Government from Introducing Evidence That Lucha
   Did Not Have a New York State Firearms License at the Time of the Alleged Offense. ........ 13

4. The Court Should Preclude the Government's Proposed Expert Testimony of
   Lennea Gordon. ................................................................................................. 14

   A.  Agent Gordon is not qualified to provide the proposed expert testimony
       under Rule 702. ............................................................................................... 15

   B.  Any expert testimony on "straw purchasing" and the "process by which firearms
       can be obtained illegally" is irrelevant and unduly prejudicial. ........................................ 16

**CONCLUSION** ............................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)......................................... 16

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007)................................................................................. 9

*City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 16901995 (S.D.N.Y. Nov. 11, 2022)............ 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)................................... 15, 16

*Huddleston v. United States*, 485 U.S. 681 (1988) .................................................................... 6, 10

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)............................... 14

*Old Chief v. United States*, 519 U.S. 172 (1997)........................................................................ 11

*United States v. Balde*, 20 Cr. 281 (S.D.N.Y. Dec. 27, 2022)..................................................... 13

*United States v. Barret*, 2011 WL 6935500 (E.D.N.Y. Dec. 31, 2011) ..................................... 5, 6

*United States v. Bradwell*, 388 F.2d 619 (2d Cir. 1968)................................................................ 8

*United States v. Cruz*, 363 F.3d 187 (2d Cir. 2004) ................................................................... 15

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ...................................................... 4, 7, 8, 12

*United States v. Davis*, 726 F.3d 434 (3d Cir. 2013) ................................................................... 11

*United States v. Garcia*, 635 F.3d 472 (10th Cir. 2011)............................................................. 18

*United States v. Hernandez*, 859 F.3d 817 (9th Cir. 2017)...................................................... 9, 13

*United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018) ................................................................. 5, 12

*United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) ..................................................... 10, 11

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ............................................................. 17, 18

*United States v. Rosemond*, 2017 WL 10113790 (S.D.N.Y. Oct. 26, 2017) ................................ 8

*United States v. Serrano*, 192 F. Supp. 3d 407 (S.D.N.Y. 2016) ................................................. 7

*United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010)............................................................. 12

*United States v. Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015).................................................. 9

*United States v. Williams*, 585 F.3d 703 (2d Cir. 2009) ......................................................... 5, 8

**Page(s)**

*United States v. Zhong*, 26 F.4th 536 (2d Cir. 2022) ....................................................... 6, 8, 17, 18

**Statutes**

18 U.S.C. § 922(a)(3) ................................................................................................ 1, 5, 13

**Rules**

Federal Rule of Evidence 104 ......................................................................................... 11

Federal Rule of Evidence 401 .............................................................................. 4, 11, 16

Federal Rule of Evidence 402 ................................................................................. *passim*

Federal Rule of Evidence 403 ................................................................................. *passim*

Federal Rule of Evidence 404 ................................................................................. *passim*

Federal Rule of Evidence 702 ............................................................................... 15, 16

**Other Authorities**

2 Modern Federal Jury Instructions-Criminal P 35.03 (2023) ..................................... 17

## INTRODUCTION

Defendant Lucha El Por Libertad ("Lucha") respectfully submits the following motions *in limine* in advance of trial, which is scheduled to begin on August 28, 2023. Lucha is charged in a superseding indictment with one count of interstate transport of firearms, in violation of 18 U.S.C. § 922(a)(3). Lucha is also charged with one count of conspiracy to violate 18 U.S.C. § 922(a)(3).

The allegations here are straightforward. Briefly, in the substantive count of the indictment, Lucha is alleged to have "willfully and knowingly" received in New York, his state of residence, a firearm that was purchased outside of New York—specifically, a Century Arms Canik 9-millimeter handgun, serial number 20CB25810—without being a licensed firearm dealer. In the conspiracy count, Lucha is alleged to have agreed with unnamed co-conspirators to violate § 922(a)(3) by "willfully and knowingly transport[ing] into and receiv[ing] in the State in which a person resided firearms purchased and otherwise obtained by such person outside that State." The indictment alleges two overt acts committed in furtherance of this conspiracy: (1) a $350 wire transfer from Lucha to co-defendant Keith Vereen in South Carolina on September 22, 2020, and (2) Vereen's purchase of a firearm from a federal firearms licensee in South Carolina on October 1, 2020. *See* Indict. (ECF No. 54).

The defense asks that the Court:

(1)    Preclude the government from introducing irrelevant and unduly prejudicial evidence of Lucha's arrest in Massachusetts on July 3, 2021;

(2)    Preclude the government from introducing irrelevant and unduly prejudicial evidence of every firearm allegedly purchased by Keith Vereen in South Carolina between May 15, 2020, and November 4, 2020;

(3)    Preclude the government from introducing evidence that Lucha did not have a New York State firearms license at the time of the alleged offense; and

(4)    Preclude the government's proposed expert witness Special Agent Lennea Gordon.

## ARGUMENT

**1. The Court Should Preclude the Government from Introducing Evidence of Lucha's Massachusetts Arrest on July 3, 2021.**

In its July 28, 2023 Rule 404(b) notice, the government stated that it intends to introduce in its case-in-chief evidence of Lucha's arrest on July 3, 2021 "during a traffic stop in Wakefield, Massachusetts . . . with ten other individuals while in possession of, among other things, eight firearms, over one thousand rounds of ammunition of different calibers, night vision goggles, and eleven ballistic vests." *See* Ex. A, Gov't Rule 404(b) Notice. Evidence of this Massachusetts arrest is not relevant to whether Lucha unlawfully received a firearm in his state of residence, and any possible relevance it may have is substantially outweighed by its unduly prejudicial effect and its potential to mislead the jury, confuse the issues, and waste time during the trial. The Court should therefore preclude the government from introducing it under Rules 402, 403, and 404(b) of the Federal Rules of Evidence.[1]

*A. Lucha's July 3, 2021 Massachusetts arrest.*

On July 3, 2021, Lucha was traveling with a group of ten other individuals from Rhode Island to Maine. *See* Ex. B, Probable Cause Narrative, USAO_0012427 at -428. They were traveling in order to conduct militia training on private land once they arrived there. *Id.* At approximately 1:10 A.M., while driving northbound on Route 95 near Wakefield, Massachusetts, the group pulled over to the side of the road so that they could refuel the two cars they were traveling in before continuing their trip. *Id.* at -427.

Massachusetts State Trooper Ryan Casey was driving northbound on Route 95 when he

---

[1]    The defense respectfully requests that the Court rule on this motion *in limine* in advance of trial because it could affect opening statements and proposed areas of voir dire. Moreover, the defense requests the scheduling of a final pre-trial conference to address any outstanding motions prior to the start of trial on August 23, 24, or 25.

observed these vehicles pulled over on the side of the road.  He pulled over behind the cars and activated his emergency lights.  *Id.*  Casey approached the cars and observed one of the occupants, Jamhal Latimer, outside of one car carrying a rifle.  *Id.*  Latimer informed Casey of the group's plans to travel to Maine.  *Id.*  As Casey spoke to Latimer, Casey observed several other individuals also holding rifles.  Lucha was not one of the individuals that Casey purportedly saw holding a firearm.  *Id.* at -427 to -428 (stating Casey's observations that Latimer, Aaron Johnson, and Quinn Cumberlander were holding rifles).

Casey and the other officers that arrived on the scene requested that the group stow their weapons in the cars while the police investigated the identities of the group members.  Members of the group refused to do so, citing, among other things, the Second Amendment.  *Id.* at -428 to -429.  Although no weapons were ever pointed or fired at any of the police officers on the scene, the group declined to disarm themselves for several hours.  Police officers closed down both sides of Route 95 while negotiating with the group.  The group ultimately peacefully disarmed, and subsequently all of the individuals traveling in the group, including Lucha, were arrested.  *Id.* at -429 to -430.  Lucha was charged with firearm possession offenses under state law as a result of this incident; those charges remain pending in Massachusetts Superior Court, and trial is scheduled for February 2024.  *See* Ex. C, Docket in *Commonwealth v. Lucha El Por Libertad*, 2181CR00366 (Mass. Super. Ct.).

After the members of the group were arrested, the Massachusetts authorities obtained search warrants for both of their cars.  Eight firearms were recovered from these cars.  *See* Ex. B at -430 to -431.  According to the government, one of the guns was purchased by Vereen in South Carolina; the other firearms were traced to separate purchasers.  *See* Ex. D, Firearm Trace Summaries, USAO_0014939.  The government has not presented evidence of this firearm being

3

transported to, or received in, New York by Lucha.

Besides the firearms, several other items were recovered, including ballistic vests, ammunition, camouflage uniforms, ballistic helmets, and a pair of night-vision goggles. *See* Ex. B at -430 to -431. The police also recovered and searched four cell phones belonging to other individuals (Jamhal Latimer, Quinn Cumberlander, and Aaron Johnson) arrested with Lucha during the incident.

B. *The Massachusetts incident is irrelevant and inadmissible under Rule 402.*

As an initial matter, all evidence relating to and recovered during this Massachusetts incident should be precluded under Rule 402 because it is irrelevant to the charges in the indictment. The Second Circuit employs an "inclusionary" approach to other acts evidence, but this type of evidence is not admissible if (1) it is "irrelevant under Rule 402," (2) it is "overly prejudicial under Rule 403," or (3) it is introduced for "the sole purpose of showing the defendant's bad character." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). "[D]istrict courts should not presume that such evidence is relevant or admissible." *Id*.

The irrelevance of the Massachusetts incident to the substantive violation of § 922(a)(3) charged in the indictment is clear because it has no "tendency to make a fact more or less probable" in this New York trial and is not "of consequence in determining the action." Rule 401(a)–(b). Possession of a firearm in Massachusetts does not violate any prohibitions against importing a firearm into New York. Further, none of the Massachusetts firearms are at issue in this case. The substantive count only charges Lucha with violating § 922(a)(3) with respect to a single firearm that was seized in the Bronx on June 23, 2021—two weeks before the July 3, 2021 Massachusetts arrest. *See* Indict. ¶ 4.

And regarding the conspiracy charge, the government does not claim that Lucha joined a conspiracy to form a militia or a conspiracy to possess firearms (or "ammunition," or "night vision

goggles," or "ballistic vests," *see* Ex. A).  Instead, the government alleges that Lucha conspired to violate 18 U.S.C. § 922(a)(3), *see* Indict. ¶ 2, which makes it unlawful for any person other than a licensed firearm dealer "to transport into or receive in the State where he resides" a firearm obtained outside of that state.  Lucha is only alleged to be a New York resident; there is no evidence that he has ever resided in Massachusetts.  According to the government's discovery, Vereen—the only other individual alleged to have committed an overt act in furtherance of the alleged conspiracy—is a resident of South Carolina.  And to the extent the government would seek to broaden the conspiracy to include every person arrested on July 3, 2021, in addition to Vereen, the government has not produced evidence suggesting that any of those individuals were even Massachusetts residents.

The presence of firearms recovered during Lucha's arrest in Massachusetts, without any connection between those firearms and New York, is not probative of whether Lucha agreed with Vereen or anyone else to receive firearms into his state of residence, nor is it probative of Lucha's motives or intent to receive firearms in New York.  *See, e.g.*, *United States v. Litvak*, 889 F.3d 56, 68–69 (2d Cir. 2018) (holding district court erred in admitting witness's testimony because it was not probative of the issue of defendant's conduct or intent).  This arrest—having taken place far from New York—is not "part of the very act charged," "inextricably intertwined with the evidence regarding the charged offense," or "necessary to complete the story of the crime on trial."  *United States v. Barret*, 2011 WL 6935500, at *3 (E.D.N.Y. Dec. 31, 2011) (citations omitted) (rejecting government's proffered evidence as inadmissible as direct evidence).  The elements of this case are straightforward, and failing to inform the jury of the Massachusetts incident—involving other people, other locales, and other firearms—"would not [leave] any gaps in the Government's case, nor [leave] the jury wondering about missing pieces of the story."  *United States v. Williams*, 585

F.3d 703, 707–08 (2d Cir. 2009) (holding that district court abused its discretion in admitting irrelevant evidence of "weapons, drugs, and related contraband as background evidence" to the charged crime of firearm possession because it was "not particularly helpful to explain the crime").

Further demonstrating the irrelevancy of the Massachusetts incident to the crimes charged here is the lack of a connection between any of the firearms recovered during the arrest and Lucha. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."). There is no evidence of Lucha receiving into his state of residence (New York) any of the firearms recovered in Massachusetts. Of the eight firearms recovered during the Massachusetts arrest, only one was purchased by alleged co-conspirator Vereen in South Carolina. *See* Ex. D. And the South Carolina firearm purchased by Vereen has not been traced to either Lucha or to New York, or the Southern District of New York more specifically. As such, this arrest is not "necessary" to complete the story of the crime of conspiracy to transport firearms into Lucha's state of residence. *Barret*, 2011 WL 6935500, at *3.

Evidence of the Massachusetts incident, as well as any evidence recovered during the incident, is therefore irrelevant and should be excluded under Rule 402.

C. *The Massachusetts incident is inadmissible under Rule 403.*

Even if the government could establish any relevance of the Massachusetts incident to the crimes charged in the indictment, it would still be inadmissible under Rule 403 because any possible probative value is substantially outweighed by its unfairly prejudicial effect and potential to both mislead the jury and waste time during trial. *See* Fed. R. Evid. 403; *United States v. Zhong*, 26 F.4th 536, 551–52 (2d Cir. 2022) (holding trial court abused its discretion in admitting evidence of uncharged conduct that should have been excluded under Rule 403).

Here, the government claims that evidence of the Massachusetts incident explains, among

other things, "the scope of the defendant's conduct," the "background and context for the relationship between members of the conspiracy," and Lucha's "motive" or "opportunity." Ex. A. But it is wrong. As discussed *supra* Section 1.B, no firearms recovered during this incident were traced to Lucha's home state of New York, and only one firearm recovered after the incident was connected to alleged co-conspirator Vereen. No one arrested on July 3 was a Massachusetts resident. Thus, at most, whatever evidence regarding the Massachusetts incident the government would seek to introduce at trial would only be "minimally probative" of the relevant question in this case—whether Lucha conspired to receive a firearm into his state of residence. *United States v. Serrano*, 192 F. Supp. 3d 407, 410 (S.D.N.Y. 2016) (excluding evidence of a bulletproof vest as "minimally probative of the remaining issue, i.e. whether [defendant] knowingly possessed ammunition").

By contrast, the evidence is highly prejudicial to Lucha. Evidence is unfairly prejudicial when "it tends to have some adverse effect" on a defendant "beyond tending to prove the fact or issue that justified its admission," or when it tends "to excite emotions against the defendant." *Curley*, 639 F.3d at 57 (citations omitted). Introducing evidence of the Massachusetts incident would be highly inflammatory. If the trial is dedicated to describing this incident in detail—the purposes for which Lucha was traveling with this group, the statements made by other members of the group during the incident, the length of time during which the group negotiated with police—this could lead a jury to hypothesize that Lucha is a violent individual who engaged in a scary and dangerous armed "standoff" with the police, who ought to be punished regardless of the government's ability to prove the actual § 922(a)(3) charges. *See, e.g.*, Ex. B at -429; Ex. E, Search Warrant, USAO_0014546, at -556 (describing the incident as a "standoff"). It would also likely put before the jury highly irrelevant and inaccurate evidence concerning the beliefs of Lucha and

others in the group that were arrested.  *See* Ex. E at -559 (describing the group, the Rise of the Moors, as a "militia movement" that "allege[s] they are not subject to local, state, and federal laws as a result of their identity").  Such inflammatory evidence is "significantly more sensational and disturbing than the charged crimes," which involve the receipt of a firearm into one's state of residence without the proper license to deal in firearms.  *Zhong*, 26 F.4th at 553 (citing *Curley*, 639 F.3d at 62).  The evidence therefore carries "a high possibility of jury misuse." *Curley*, 639 F.3d at 57; *see United States v. Rosemond*, 2017 WL 10113790, at *3 (S.D.N.Y. Oct. 26, 2017) (refusing to admit evidence offered as "direct evidence of the conspiracy" because "the references in the [proffered] conversation to [a] shooting in Miami and narcotics activities carry an undue risk of unfairly prejudicing defendant given the limited probative value of the evidence").  Thus, the Massachusetts incident should be excluded because of the high probability it will inflame the jury into convicting Lucha on grounds not charged in the indictment.  *See Williams*, 585 F.3d at 708 (noting the "undue prejudice that can result when the 'minute peg of relevancy [is] entirely obscured by the dirty linen hung upon it'" (quoting *United States v. Bradwell*, 388 F.2d 619, 622 (2d Cir. 1968)).

Introducing this evidence would also risk confusing the issues for the jury.  Presented with evidence of this arrest, a jury may be led to believe they can convict Lucha simply for his (and others') conduct during the Massachusetts incident.  And given the government's focus on all eight guns found in the two cars in which Lucha's group was traveling—although only one has been at all connected to co-conspirator Vereen—and on the other materials that were recovered, *see* Ex. A, it is probable that the introduction of this evidence will lead a jury to believe they should convict Lucha simply for possession of any of the weapons that were recovered in Massachusetts.

Courts have recognized this danger in the § 922(a)(3) context.  *See United States v.*

*Hernandez*, 859 F.3d 817 (9th Cir. 2017). In *Hernandez*, the defendant was convicted of violating § 922(a)(3) by transporting firearms from Arizona to his state of residence (California). *Id.* at 819. At trial, the government had introduced evidence of his "arguable commission of uncharged crimes related to the firearms at issue," specifically that he had been reselling those firearms unlawfully. *Id.* at 820. The Ninth Circuit reversed the defendant's conviction because that evidence, combined with a broad jury instruction on the "willfulness" element of § 922(a)(3), created a serious risk that defendant "was targeted as a gun trafficker and that the jury was allowed to convict him, not for his willful, unlawful transportation of weapons, but for his intent to commit the future crimes of unlawfully selling those weapons." *Id.* at 823. Here too, there is a serious risk that allowing the jury to hear evidence of the Massachusetts incident will lead them to believe that they can convict him for having guns in Massachusetts, participating in a "standoff" in Massachusetts, or being part of an armed militia group—conduct that is simply not covered by any of the charges in the indictment. *See Hernandez*, 859 F.3d at 824 (evidence of intent to commit *other* crimes "is not a substitute for" intent to commit the *charged* crime); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (denying government's request to allow evidence of uncharged conduct because it "unnecessarily injects elements of violence" into the case and "may mislead the jury and lead it to convict defendant for [that] conduct").

Introducing evidence of the Massachusetts incident further risks turning this straightforward case into a "multi-ringed sideshow of mini-trials on collateral issues" on the merits of the still-pending Massachusetts action against Lucha. *City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 16901995, at *6 (S.D.N.Y. Nov. 11, 2022) (citation omitted); *see Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (recognizing that admitting evidence about previous cases "inevitably results in trying those case before the jury and reversing district court's failure to exclude such

evidence).  It will require introducing testimony and body camera footage to explain the circumstances of the group's first encounter with Massachusetts police, the details of when and how the incident unfolded, and the details of whether or not Lucha actually possessed a gun in Massachusetts—which, again, is not his state of residency.  There is no need for trial to devolve into an hours- or days-long sideshow over irrelevant evidence.  The evidence of the Massachusetts incident should be excluded.

D.  *The Massachusetts incident should be precluded as improperly noticed under Rule 404(b).*

Finally, evidence of the Massachusetts incident should be precluded as improperly noticed and impermissible propensity evidence under Rule 404(b).  In its July 28, 2023 Rule 404(b) notice, the government informed the defense that it intends to introduce evidence of Lucha's arrest, if not as direct evidence, then "as proof of the defendant's motive, opportunity, intent, plan, knowledge, absence of mistake, or lack of accident with respect to the charged conduct."  *See* Ex. A.  By quoting nearly every purpose in the Rule without elaboration, the government's letter fails to "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b)(3)(B).  This failure can be attributed to the government's inability to articulate its theory of admission.

Bad-acts evidence is inadmissible unless it is relevant to a disputed, material issue at trial other than the defendant's character and the Court determines that the risk of unfair prejudice does not substantially outweigh the probative value of the evidence.  There are four distinct steps that must be taken before the government may be permitted to introduce such evidence against Lucha under Rule 404(b).  *See Huddleston*, 485 U.S. at 691; *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).  First, the government must identify a proper, *i.e.*, nonpropensity, purpose for the evidence.  Fed. R. Evid. 404(b).  Second, it must explain the relevance of the evidence to that

proper purpose.  Fed. R. Evid. 104(b), 401, 402.  In other words, "the government must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference."  *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013).  <u>Third</u>, the Court must determine that the probative value of the evidence to this issue is not substantially outweighed by the danger of unfair prejudice, *e.g.*, that the jury will take it as evidence of the defendant's bad character.  Fed. R. Evid. 403; *McCallum*, 584 F.3d at 476 (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).  <u>Fourth</u>, and finally, if the Court determines that the evidence is admissible, it must give an appropriate limiting instruction upon the defendant's request.  *McCallum*, 584 F.3d at 475.

The government has wholly failed to follow these steps.  Instead, it has provided nothing more than a generic, bare-bones, non-detailed laundry list of possible purposes for admission of the evidence.  Accordingly, its Rule 404(b) notice is defective, and any effort to introduce evidence of the Massachusetts incident under that Rule should be precluded.  The government should not be permitted at this late stage to amend its notice and articulate a more fulsome theory for why evidence of the incident satisfies a Rule 404(b) exception.  If the government seeks to do so, however, the defense reserves the right to respond.[2]

## 2.  The Court Should Preclude the Government from Introducing Evidence of Every Firearm Allegedly Purchased by Keith Vereen in South Carolina.

For the same reasons discussed above regarding the Massachusetts incident, *see supra* Section 1, the Court should also preclude the government from introducing evidence that Vereen "bought at least 25 firearms" in South Carolina, Ex. A, including firearms that Lucha is not alleged to have purchased or otherwise obtained in his state of residence.  This evidence is

---

[2]    Should the Court deny this motion to preclude, the defense requests the opportunity to propose limitations on what details of the Massachusetts incident may be permitted, and any limiting instructions that may be necessary, in light of the Court's ruling.

irrelevant under Rule 402; unduly prejudicial under Rule 403; and improperly noticed under Rule 404(b).

According to the government's evidence, one firearm purchased by Vereen was recovered during a stop of Lucha in the Bronx in June 2021. Any other firearms that Vereen may have purchased were recovered in other states, or in connection with the arrests of other individuals besides Lucha within New York. The introduction into evidence of these other firearms is irrelevant to the critical issue of whether Lucha willfully received firearms purchased by Vereen in his state of residence. *See Litvak*, 889 F.3d at 69 (holding "irrelevant" evidence should not have been admitted at trial). Nor do these firearms, which may speak to Vereen's participation in a different conspiracy to purchase firearms for others, bear on whether Lucha agreed with Vereen to receive firearms in New York or was even aware that Vereen did purchase any other firearms. *See United States v. Torres*, 604 F.3d 58, 65, 70 (2d Cir. 2010) (reversing defendant's conviction for conspiracy; while "government need not show that the defendant knew all of the details of the conspiracy," the defendant must know "its general nature and extent," which government's proof did not show).

And this evidence is unduly prejudicial to Lucha. A jury may improperly conclude that Lucha should be convicted based solely on the scope of Vereen's conduct, rather than his own conduct. *See Curley*, 639 F.3d at 59–60 (holding it was error to admit evidence that had "low probative value" and "high risk of prejudicial effect" because it "served no real purpose other than to show that [the defendant's brother]—not Curley—had a bad character").

Because it is irrelevant and unduly prejudicial, and because the government's Rule 404(b) notice is deficient, *see supra* at 10–11, any effort to introduce evidence of the Vereen-purchased firearms that Lucha is not alleged to have purchased or otherwise obtained in his state of residence

should be precluded.

### 3. The Court Should Preclude the Government from Introducing Evidence That Lucha Did Not Have a New York State Firearms License at the Time of the Alleged Offense.

The Court should preclude the government from introducing evidence that Lucha had not applied for or received a New York state firearms license at the time he possessed a handgun in June 2021. Such evidence or testimony should be excluded under Rules 402, 403, and 404 of the Federal Rules of Evidence. Lucha's failure to apply for a New York state gun license is irrelevant to whether he violated the federal statute with which he is charged, 18 U.S.C. § 922(a)(3). New York State licensure has nothing to do with whether Lucha willfully received a gun obtained out of state into his state of residence.

First, the *mens rea* issue for the jury to resolve is not whether Lucha knew he could possess a firearm in New York without a New York license; it is instead whether he knew that the act of receiving a gun into his state of residence without being a licensed distributor, manufacturer, or collector of firearms was somehow unlawful. *See Hernandez*, 859 F.3d at 822 (to prove violation of § 922(a)(3), the government must show that Lucha knew that the "transportation of firearms into [his state of residence] was somehow unlawful"). Licensing evidence beyond his lack of federal licensing as an importer, manufacturer, dealer, or collector of firearms, is therefore irrelevant and would confuse the issue before the jury.

Second, the licensing evidence would unfairly prejudice Lucha. It would suggest to the jury an improper basis for decision by inviting jurors to hold Lucha responsible for possessing a gun without a license, without grappling with the actually relevant issue of whether Lucha knew mere receipt of a gun from a different state was unlawful. *See* Tr., *United States v. Balde*, 20 Cr. 281 (S.D.N.Y. Dec. 27, 2022), ECF No. 151 (Judge Failla precluding the government from introducing evidence about the lack of a New York firearm license against Balde—charged with

unlawful possession of a firearm as an undocumented person—because, *inter alia*, the risk of the jury punishing him for failure to register the gun was far greater than any probative value).

If the Court were to permit any evidence or reference to New York State licensure, it should allow the defense to discuss the constitutional challenges to New York's licensing scheme that resulted in the Supreme Court invalidating that licensing scheme in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). At the time of the offense conduct, June 2021, New York made it virtually impossible for law-abiding individuals to obtain a permit to carry a firearm outside of their homes. As the Court is well aware, the Supreme Court subsequently held that New York's licensing scheme was unconstitutional. *See Bruen*, 142 S. Ct. at 2159 (Alito, J., concurring) ("All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense and that the Sullivan Law, which makes that virtually impossible for most New Yorkers, is unconstitutional.").

**4.  The Court Should Preclude the Government's Proposed Expert Testimony of Lennea Gordon.**

On July 28, 2023, the government noticed its intent to call as an expert witness Special Agent Lennea Gordon of the Bureau of Alcohol, Firearms, Tobacco, and Explosives ("ATF"). *See* Ex. F, Gov't Expert Notice. The notice states that Agent Gordon would testify about the process by which firearms can be purchased, documentation of firearm transactions, and firearms tracing. The notice further states that Agent Gordon will testify about "the process by which firearms can be obtained illegally," focusing on "straw purchasing," which simply is "when an otherwise qualified individual . . . buys a firearm on behalf of another person, while purporting to be obtaining the firearm for himself." *Id.*

The Government's notice summarizes Agent Gordon's expected testimony and her experiences in law enforcement but fails to show why her testimony would be reliable. The Court

should therefore exclude her testimony or, at the very least, hold an evidentiary hearing. Moreover, the Court should preclude any testimony about "straw purchasing" as unhelpful, irrelevant, and unduly prejudicial to Lucha.

A. _Agent Gordon is not qualified to provide the proposed expert testimony under Rule 702._

Federal Rule of Evidence 702 allows the presentation of expert testimony on the basis of "scientific, technical, or other specialized knowledge."  Before such evidence is admitted, however, the trial judge must perform its gatekeeper function and ensure that an expert's testimony "rests on a reliable foundation."  _Daubert v. Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579, 597 (1993).  _Daubert_'s requirement applies equally to law enforcement expert testimony.  _See United States v. Cruz_, 363 F.3d 187, 192 (2d Cir. 2004) ("The principles pertaining to expert testimony apply with full force where law enforcement officials are called on to provide scientific, technical, or other specialized knowledge to the trier of fact.")  The Advisory Committee commentary cautions Courts that "[i]if the witness is relying solely or primarily on experience"— as appears to be the case here— "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"  Fed. R. Evid. 702 advisory committee's note.

Here, the government's notice fails to provide an explanation as to how or why Agent Gordon's experiences in law enforcement make her qualified to testify on the intricacies of firearm purchasing and the bookkeeping requirements of firearm sellers and buyers.  For example, what observations, investigative tasks, research or writings in her law enforcement capacity qualify her to provide reliable testimony in the proposed areas?  The answer cannot be found in the Government's notice or Agent Gordon's CV, attached to this notice.

Agent Gordon has not provided expert testimony in at least the last four years (perhaps

ever) and the government's notice provides no basis for her to be allowed to testify in this case. For these reasons, this Court should find that the government has failed to establish Agent Gordon's qualifications as an expert or that her opinions and conclusions are reliable. In the alternative, the Court should hold a hearing to determine the reliability of Agent Gordon's conclusions.

B. *Any expert testimony on "straw purchasing" and the "process by which firearms can be obtained illegally" is irrelevant and unduly prejudicial.*

Even if the Court finds Agent Gordon qualified to testify as an expert witness in some of the areas described in the government's notice, she should nevertheless be precluded from testifying about "straw purchasing," "the mechanics of straw purchasing," and "some of the common reasons why individuals engage in straw purchasing, how straw purchasing enables people to take advantage of the patchwork of state gun laws, and how straw purchasers are typically identified by law enforcement." Ex. F. This proposed testimony is irrelevant, highly prejudicial, and must be excluded pursuant to Rules 401, 402 and 403.

Expert testimony is inadmissible when it merely addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). Even where expert testimony properly falls within Rule 702, the Court continues to review for relevance under Rule 401 and the risk of unfair prejudice, confusion, or misleading the jury under Rule 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks omitted).

Lucha is accused of unlawfully receiving into his state of residence a firearm obtained

outside of his state and conspiring to do the same.  The critical question for the jury will be whether Lucha knew he was doing "something that the law forbids" in receiving a firearm from out of state into his state of residence without being a licensed distributor or manufacturer of firearms.[3]  To the extent that the government needs to explain how Lucha came to possess a firearm from another state, they can introduce evidence on the purchase and transportation of the firearm in South Carolina by Vereen.  The government may admit relevant ATF documents and testimony explaining the purchaser forms, the mechanics of firearm purchases, and the information that was provided by the purchaser.  But expert testimony on "straw purchasing" and the reasons why people use straw purchasers exceeds the proper scope of expert testimony and will only serve to "usurp[] the jury's function by providing an overall conclusion of criminal conduct." *Zhong*, 26 F.4th at 556 (internal quotation marks omitted).

No expert testimony is required to help the jury understand the concept of one person buying a firearm for another person, while claiming that the firearm is for himself.  The government is free to put these facts before the jury and allow them to draw their own conclusions, but no specialized knowledge is necessary for the jury to connect these dots.  While members of the jury may not be familiar with the process of firearm purchasing, the admissibility of expert testimony requires more than just an unfamiliar subject matter.  The legal test is whether the case "concerns matters that the average juror is not capable of *understanding* on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008). As the Court can see in Ex. F, the government was able to explain the conduct underlying "straw purchasing" in a single sentence in its notice.  This conduct is simple and does not warrant expert interpretation.

Beyond being unnecessary, any expert testimony regarding "straw purchasing" would be

---

[3]     2 Modern Federal Jury Instructions-Criminal P 35.03 (2023).

highly prejudicial.  Allowing a law enforcement expert to not only discuss the mechanics "of straw purchasing"— which already carries a prejudicial connotation of criminality—but to opine on the common illegal reasons someone engages in this sort of transaction and how "straw purchasing" allows people to insidiously "take advantage of patchwork of state gun laws" creates the unacceptable risk that the jury will assume that Lucha himself engaged in this conduct for these "common illegal" reasons, and therefore knew he was acting unlawfully in receiving a firearm across state lines based on the expert's testimony, instead of the facts.  The Second Circuit has explicitly rejected this "substitution of expert opinion for factual evidence."  *Zhong*, 26 F.4th at 556 (quoting *Mejia*, 545 F.3d at 190).

The prejudice that this testimony would inject into trial far outweighs any potential relevance.  Lucha is not charged with being a straw purchaser, submitting false statements on an ATF form or to a licensed firearm seller, or directing others to submit false statements.  There will be no evidence alleging that he acted as straw purchaser, nor is Lucha charged with being a prohibited person who is not allowed to have a firearm, which most likely is going to be the "common illegal reason" for straw purchasing that the expert would talk about.  While expert testimony on straw purchasing has been deemed relevant and helpful in the context of a defendant charged with engaging in straw purchasing, *e.g., United States v. Garcia*, 635 F.3d 472 (10th Cir. 2011) (permitting expert testimony on straw purchasers and the particular demand for firearms in Mexico in case where defendant was charged with multiple counts of knowingly making false statements to a federally licensed firearms dealer), it is not relevant or helpful in this context faced with an entirely different, and narrow legal question—whether Lucha willfully received a firearm obtained in another state into his state of residence.  Because the probative value of the proposed expert testimony on "straw purchasing" is substantially outweighed by a danger of unfair

prejudice, the Court should preclude all testimony on this subject matter.

## **CONCLUSION**

For the above-stated reasons, Lucha's motions *in limine* should be granted in their

entirety.

Dated: August 14, 2023                              Respectfully submitted,
        New York, New York

                                        _____/s/_____

                                        Zawadi Baharanyi, Esq.
                                        Amanda Mayo, Esq.
                                        Federal Defenders of New York
                                        52 Duane Street, 10th Floor
                                        New York, NY 10038
                                        (917) 612-2753