UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>              v.<br><br>STEVEN PEREZ,<br>        a/k/a "Lucha,"<br><br>                    Defendant. | S1 22 Cr. 644 (JSR) |

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Ashley C. Nicolas
Madison Reddick Smyser
Sarah Mortazavi
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 4

I.    VEREEN'S GUN PURCHASES AND THE CIRCUMSTANCES OF THE
      MASSACHUSETTS ARREST ARE ADMISSIBLE AS DIRECT EVIDENCE
      OR, IN THE ALTERNATIVE, UNDER RULE 404(B)................................................... 4

      A. Applicable Law ................................................................................................................ 5

            1.   Direct Evidence................................................................................................. 5
            2.   Rule 404(b) ........................................................................................................ 5
            3.   Rule 403 ............................................................................................................. 7

      B. Discussion ........................................................................................................................ 7

            1.   Vereen's Gun Purchases Are Admissible ....................................................... 7
            2.   Evidence of The Massachusetts Arrest Is Admissible .......................... 11

II.   CROSS-EXAMINATION OF LAW ENFORCEMENT OFFICERS ABOUT
      CERTAIN IRRELEVANT TOPICS SHOULD BE PRECLUDED ......................... 14

      A. Applicable Law .............................................................................................................. 15

      B. Discussion ...................................................................................................................... 17

            1.  Cross-Examination of Officer Smalls About Prior Suppression Hearing Testimony
                Should Be Precluded ...................................................................................... 17
            2.  Cross-Examination of Massachusetts Troopers About the Defendant's Dismissed
                Lawsuit Should Be Precluded ........................................................................ 18

III.  ARGUMENT THAT THE DEFENDANT'S ACTIONS WERE OR SHOULD
      HAVE BEEN LAWFUL UNDER THE SECOND AMENDMENT SHOULD BE
      PRECLUDED ..................................................................................................................... 19

CONCLUSION ........................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Delaware v. Van Arsdall*,
  475 U.S. 673 (1986)................................................................................ 17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022)............................................................................ 23

*Phillips v. City of New York*,
  871 F. Supp. 2d 200 (E.D.N.Y. 2012) ............................................... 18, 22

*Saldarriaga v. United States*,
  No. 97 Cr. 1275 (WK), 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002)..................................... 19

*Sparf v. United States*,
  156 U.S. 51, 72 (1895)......................................................................... 23, 24

*Talib v. Massachusetts*,
  No. 21 Civ. 2805 (S.D. Tex.)..................................................................... 22

*United States v. Aminy*,
  15 F.3d 258 (2d Cir. 1994)......................................................................... 12

*United States v. Carboni*,
  204 F.3d 39 (2d Cir. 2000)...................................................................... 5, 14

*United States v. Colon*,
  880 F.2d 650 (2d Cir. 1989)......................................................................... 6

*United States v. Crowley*,
  318 F.3d 401 (2d Cir. 2003)................................................................... 18, 19

*United States v. Dekattu*,
  No. 18 Cr. 474 (ARR), 2019 WL 885620 (E.D.N.Y. Feb. 22, 2019)................................ 19, 22

*United States v. Fernandez*,
  No. 09 Cr. 1049 (RJS), 2009 WL 10637246 (S.D.N.Y. Dec. 30, 2009) ................................ 18

*United States v. Figueroa*,
  618 F.2d 934 (2d Cir. 1980)......................................................................... 9

*United States v. Flaharty*,
  295 F.3d 182 (2d Cir. 2002)....................................................................... 19

*United States v. Gelzer*,
  50 F.3d 1133 (2d Cir. 1995)..................................................................... 8, 16

*United States v. Gonzalez*,
    110 F.3d 936 (2d Cir. 1997)............................................................................ 5, 11

*United States v. Herron*,
    No. 10 Cr. 615 (NGG), 2014 U.S. Dist. LEXIS 63872 (E.D.N.Y. May 8, 2014) .................... 13

*United States v. Hsu*,
    669 F.3d 112 (2d Cir. 2012)............................................................................ 5

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010)............................................................................ 11

*United States v. Maldonado-Rivera*,
    922 F.2d 934 (2d Cir. 1990)............................................................................ 17

*United States v. Mercado*,
    573 F.3d 138 (2d Cir. 2009)............................................................................ 7

*United States v. Meyerson*,
    18 F.3d 153 (2d Cir. 1994)............................................................................ 6

*United States v. Moye*,
    793 F. App'x 19 (2d Cir. 2019) ...................................................................... 6

*United States v. Nelson*,
    365 F. Supp. 2d 381 (S.D.N.Y. 2005)............................................................... 18

*United States v. Pascarella*,
    84 F.3d 61 (2d Cir. 1996).............................................................................. 7

*United States v. Paulino*,
    445 F.3d 211 (2d Cir. 2006)............................................................................ 5

*United States v. Pipola*,
    83 F.3d 556 (2d Cir. 1996)............................................................................ 8

*United States v. Pitre*,
    960 F.2d 1112 (2d Cir. 1992)........................................................................... 8

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002)........................................................................... 23

*United States v. Ramirez*,
    894 F.2d 565 (2d Cir. 1990)............................................................................ 7

*United States v. Regan*,
    103 F.3d 1072 (2d Cir. 1997)........................................................................... 24

*United States v. Robinson*,

No. 17 Cr. 249 (PAE), 2017 WL 4466616 (S.D.N.Y. Oct. 5, 2017) .......................................... 6

*United States v. Roldan-Zapata,*

916 F.2d 795 (2d Cir. 1990) ............................................................................................. 8, 11

*United States v. Saliba,*

489 F. App'x 501 (2d Cir. 2012) .......................................................................................... 24

*United States v. Scarpa,*

913 F.2d 993 (2d Cir. 1990) ................................................................................................. 17

*United States v. Schlussel,*

No. 08 Cr. 694 (JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) ........................................ 18

*United States v. Tarricone,*

996 F.2d 1414 (2d Cir. 1993) ............................................................................................... 6

*United States v. Thomas,*

116 F.3d 606 (2d Cir. 1997) ............................................................................................... 24

*United States v. Thomas,*

54 F.3d 73 (2d Cir. 1993) ....................................................................................................... 6

*United States v. Tussa,*

816 F.2d 58 (2d Cir. 1987) ....................................................................................................... 9

*United States v. Washington,*

705 F.2d 489 (D.C. Cir. 1983) ............................................................................................... 24

*United States v. Williams,*

205 F.3d 23 (2d Cir. 2000) ....................................................................................................... 7

*United States v. Zackson,*

12 F.3d 1178 (2d Cir. 1993) ................................................................................................... 6

**Statutes**

18 U.S.C. § 371 ............................................................................................................................ 2, 4

18 U.S.C. § 922(a)(1)(A) ................................................................................................................ 2

18 U.S.C. § 922(a)(3) ................................................................................................ 1, 4, 19, 20, 21

**Rules**

Fed. R. Evid. 403 ................................................................................................................... 7, 11

Fed. R. Evid. 608(b) ................................................................................................................ 15, 16

Federal Rule of Evidence 404(b) ................................................................................ 1, 4, 5, 6, 7, 14

Rule 403 ................................................................................................................................ 7, 14, 16

## PRELIMINARY STATEMENT

The Government respectfully seeks rulings *in limine* in advance of the trial against defendant Steven Perez, a/k/a "Lucha," scheduled to begin on August 28, 2023.

*First*, the Government seeks pretrial rulings that the following categories of evidence are admissible:

- Gun purchases made by Keith Vereen, the defendant's co-conspirator, as direct evidence of the conspiracy to violate 18 U.S.C. § 922(a)(3) charged in Count One of the operative indictment (Dkt. 2 (the "Superseding Indictment")), or, in the alternative, under Federal Rule of Evidence 404(b); and

- The facts and circumstances surrounding the arrest of the defendant and others following a car stop and armed standoff in Massachusetts on or about July 3, 2021, as direct evidence of the aforementioned conspiracy, or, in the alternative, under Rule 404(b).

*Second*, the Government seeks to preclude the defendant from introducing evidence and argument, and from pursuing cross-examination, related to the following topics:

- Testimony in a prior suppression hearing by New York City Police Department ("NYPD") Officer Jarren Smalls, who arrested the defendant in the Bronx, New York, on or about June 23, 2021;

- A dismissed *pro se* civil lawsuit brought by the defendant and others arrested with him in Massachusetts on or about July 3, 2021, against, among others, officers who were involved in the arrest, alleging various violations of their constitutional rights; and

- Argument that the defendant's receipt of firearms was not, or should not have been, unlawful under the Second Amendment.

## BACKGROUND

The defendant is charged in the Superseding Indictment with two counts, both involving his receipt of firearms in his state of residence (New York) that were obtained outside New York State—specifically, in South Carolina—without the proper licenses. The defendant obtained these

firearms from Vereen, his co-conspirator and illegal supplier of firearms.[1]  Specifically, between in or about May 2020 and in or about November 2020, Vereen purchased at least 25 firearms from federal firearm licensees ("FFLs")—more commonly known as gun stores—in South Carolina on behalf of others, including the defendant.  In other words, Vereen made "straw purchases" by representing to the FFLs that he was the true purchaser of the firearms when, in fact, he was making the purchases on behalf of others.  "Straw purchasing" is a common way for those who would be otherwise prohibited from purchasing firearms—like the defendant—to circumvent firearms regulations by obtaining guns through an individual—like Vereen—who appears to be a legitimate purchaser and is willing to make false representations about the nature of the purchase, often in exchange for a fee.

As relevant to the charges against the defendant, after purchasing firearms in South Carolina, Vereen made at least four roundtrips between South Carolina to the Bronx in the fall of 2020 in order to deliver the firearms to their true purchasers, including the defendant.  Before each trip, Vereen purchased multiple guns in South Carolina.  During the trips, Vereen and the defendant contacted each other by phone and, as demonstrated by cell site data, met in person to exchange guns and money.  On at least one occasion, the defendant paid Vereen via a Western Union transfer sent from the Bronx to South Carolina.  Other New York residents, including another of the defendant's co-conspirators, Jamil Bey, also paid Vereen using Western Union. According to toll records, the defendant acted as a middleman between Bey and Vereen, who did not otherwise

---

[1] Vereen was charged with firearms trafficking, in violation of 18 U.S.C. § 922(a)(1)(A), and conspiracy to engage in such trafficking, in violation of 18 U.S.C. § 371 on November 30, 2021. *United States v. Vereen*, No. 22 Cr. 644 (JSR).  Vereen was arrested on December 6, 2021, and pleaded guilty to a gun trafficking conspiracy charge on or about March 15, 2023. Vereen is currently pending sentencing.

communicate by phone directly.[2]

The defendant has twice been arrested in possession of firearms that Vereen purchased from a South Carolina FFL.  First, on or about June 23, 2021, the defendant was arrested in the Bronx, New York (the "Bronx Arrest"), in possession of a Canik TP9 9mm handgun ("Firearm-1") that Vereen had purchased in South Carolina on or about October 1, 2020.  Just two weeks later, on or about July 3, 2021, the defendant was again arrested with firearms, including a Glock Model 44, .22 caliber pistol ("Firearm-2"), which Vereen had purchased in South Carolina on or about July 23, 2020.  At the time of this second arrest, the defendant was stopped on I-95 in Massachusetts with a group of individuals (the "co-conspirators," or "CCs"), who self-identified as members of a group called the "Rise of the Moors" (the "Massachusetts Arrest").  One of the CCs was Bey, who had sent $600 to Vereen on or about September 12, 2020, and had communicated repeatedly with the defendant.[3]

The CCs, who at the time of the traffic stop were armed and dressed in camouflage uniforms and ballistic vests, were en route from Rhode Island to Maine to attend a training exercise that they called "Operation Fountainhead."  They had over ten firearms with them, including military-style rifles and handguns; over a thousand rounds of ammunition; over two dozen magazines, including a loaded, large-capacity drum magazine; and other equipment, including night vision goggles.  They had planned the event for weeks, referring to it as the "east coast training exercise," and instructing one another on proper preparations, including packing

---

[2] Specifically, the toll records show a pattern in which Bey and the defendant communicated, followed by communications between the defendant and Vereen.

[3] In sending the money to Vereen, "Jamil Bey" used a phone number subscribed to a building address associated through DMV records with both himself and an individual named Brandon Britton.  Britton was also arrested alongside the defendant during the Massachusetts Arrest.

firearms and other military equipment. What began as a simple traffic stop turned into an hours-long standoff between the CCs and Massachusetts law enforcement, which eventually ended with the voluntary surrender of the defendant and his associates.

The Superseding Indictment charges the defendant in Count Two with one substantive count of receiving Firearm-1 in New York State after its purchase in South Carolina, in violation of 18 U.S.C. § 922(a)(3). It also charges the defendant in Count One with participating in a conspiracy in which individuals, including the defendant, were conspiring to receive firearms that were obtained outside of their state of residency, in violation of 18 U.S.C. § 371. Trial is scheduled to begin on August 28, 2023.

## ARGUMENT

### I.    Vereen's Gun Purchases and the Circumstances of the Massachusetts Arrest Are Admissible as Direct Evidence or, in the Alternative, Under Rule 404(b)

As evidence of the defendant's participation in a conspiracy to receive guns in New York State that were obtained outside of the state, the Government seeks to admit evidence of (i) gun purchases by Vereen during the course of the conspiracy, and (ii) the facts and circumstances surrounding the Massachusetts Arrest. Both of these are direct evidence of the conspiracy to obtain firearms in violation of Section 922(a)(3). As set forth below, evidence relating to these instances is admissible either as direct proof of the charged conduct or for other proper purposes under Rule 404(b).[4]

---

[4] On July 28, 2023, the Government provided notice to the defendant that it intended to offer evidence of these arrests as direct evidence or, in the alternative, under Rule 404(b). Defense counsel has indicated in conferrals with the Government that they oppose admission of this evidence.

### A.    Applicable Law

#### 1.    Direct Evidence

Direct evidence of a crime is not limited to "that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997).  Rather, direct evidence includes evidence that is "inextricably intertwined with the evidence regarding the charged offense," and/or "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted); *see also United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012).

#### 2.    Rule 404(b)

Rule 404(b) allows for the admission of uncharged crimes, wrongs, or other acts for purposes other than proving criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks omitted).

Applying this approach, the Second Circuit has routinely approved of the admission of "other acts" evidence with respect to the issues of knowledge, intent, and/or motive.  *See, e.g.*, *United States v. Thomas*, 54 F.3d 73, 81–82 (2d Cir. 1993); *United States v. Meyerson*, 18 F.3d 153, 166–67 (2d Cir. 1994).  The same is true of evidence of a common scheme or plan and lack of accident.  *See United States v. Moye*, 793 F. App'x 19, 22 (2d Cir. 2019).  Where the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate.  *See, e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is

generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

To be admissible, Rule 404(b) evidence "must relate to an issue in dispute." *United States v. Robinson*, No. 17 Cr. 249 (PAE), 2017 WL 4466616, at *2 (S.D.N.Y. Oct. 5, 2017). The defendant's knowledge and intent are in issue unless the defendant has unequivocally conceded that element of the offenses with which he is charged. *See, e.g.*, *United States v. Colon*, 880 F.2d 650, 656–57 (2d Cir. 1989); *see also United States v. Tarricone*, 996 F.2d 1414, 1421 (2d Cir. 1993) (explaining that an issue is only removed from dispute if defendant "express[es] a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed."); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (when the defendant "disavows awareness that a crime was being perpetrated" and the Government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").

Evidence of uncharged acts also is admissible as background evidence where it is used to (i) explain the development of the illegal relationship between co-conspirators; (ii) explain the mutual criminal trust that existed between co-conspirators; and/or (iii) complete the story of the crime charged. *See United States v. Mercado*, 573 F.3d 138, 141–42 (2d Cir. 2009); *United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000) (affirming admission of prior act evidence involving co-conspirators "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (internal quotation marks omitted)); *United*

*States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence is admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

### 3.    Rule 403

Evidence offered either as direct evidence or under Rule 404(b) remains subject to Federal Rule of Evidence 403. The Court must therefore determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion. Fed. R. Evid. 403.   The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant was] charged.'"   *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).   Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"   *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).   To the extent there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant).

### B.    Discussion

### 1.    Vereen's Gun Purchases Are Admissible

The purchases of firearms by co-conspirator Vereen, including to sell to individuals other

than the defendant, is admissible as direct proof of the charged conspiracy, spanning from in or about May 2020 through in or about July 2021. Vereen and the defendant worked together to commit the charged crime over the course of several months. Vereen's acts in furtherance of the conspiracy, even when those acts were taken for the benefit of conspirators apart from the defendant, are admissible as direct proof of the offense.

As described above, over the course of the conspiracy charged in the Superseding Indictment, the defendant's co-conspirator Keith Vereen purchased 25 firearms (the "Vereen Guns") from at least six FFLs in South Carolina. On at least four occasions, Vereen traveled from South Carolina to the Bronx shortly following firearms purchases, on nearly every occasion communicating with, and traveling in close proximity to, the defendant. On two occasions, the defendant was arrested while in possession of a Vereen Gun after Vereen had traveled to the Bronx to meet with the defendant. On one occasion, the defendant transferred money via wire payment from the Bronx to Vereen in South Carolina. On another occasion, the defendant's co-conspirator Bey transferred money via wire payment from the Bronx to Vereen.[5]

*First Trip (September 14-17):* Specifically, between September 12 and 13, 2020, Vereen purchased seven firearms from FFLs in South Carolina. On September 14, 2020, Vereen received a Western Union payment from Bey and traveled to New York, communicating with the defendant once. Over the course of the next two days—September 15 and 16, 2020—Vereen and the defendant communicated at least nine times. On the evening of September 16, 2020, cellphones

---

[5] At least one other Bronx resident, Ricardo Rodriguez Resto, also sent a Western Union payment to Vereen. Like with Bey, call records reflect that the defendant had a significant number of communications with Rodriguez Resto.

belonging to Vereen and the defendant both connected to the same cellphone tower in the Bronx.[6] On September 17, 2020, Vereen returned to South Carolina.

*Second Trip (October 2-6):* Vereen and the defendant then communicated six times on September 21, 2020. The next day, the defendant sent Vereen a $350 wire transfer before Vereen purchased an additional five firearms between October 1 and 2, 2020. On October 3, 2020, Vereen communicated with the defendant five times and traveled to New York. The same day, cellphones belonging to Vereen and the defendant connected to the same cellphone tower in the Bronx at approximately 3:00 a.m. Then, on the evening of October 4, the defendant's phone, Vereen's phone, and Bey's phone all pinged on the same cell tower within an hour of each another, suggesting that the users of these phones met in person before Vereen returned to South Carolina on October 6, 2020.

*Third Trip (October 22-23):* After returning to South Carolina, Vereen purchased three guns on or about October 21, 2020. He then traveled to New York on October 22, 2020. That day, Vereen and the defendant's cellphones connected to the same cell tower multiple times in the Bronx. The next day, Vereen arrived back in South Carolina, and the defendant attempted to contact him.

*Fourth Trip (November 1-3):* Finally, on or about October 31, 2020, Vereen purchased two firearms in South Carolina. Following the same pattern, Vereen arrived in New York the next day, and pinged off of the same cell towers as the defendant multiple times. Vereen was back in South Carolina by the morning of November 3, 2020.

The evidence therefore shows that during each of these four trips, Vereen was bringing

---

[6] The Government expects that Andrew Petersohn, a professional engineer with extensive experience with cell site location data, will testify that the Bronx is a densely populated area in which cell sites serve a relatively small geographical area that typically spans a few city blocks.

guns from South Carolina to New York for the defendant and others with whom the defendant conspired. Vereen's gun purchases are "inextricably intertwined" with this criminal conspiracy and are direct evidence of the scope and nature of the conspiracy, as well as the nature of the relationship between Vereen and the defendant. As described above, each of the purchases "arose out of the same transaction or series of transactions as the charged offense" and "is necessary to complete the story of the crime on trial." *Gonzalez*, 110 F.3d at 942; *see also United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010). Further, as the Second Circuit has explained, details regarding a "pre-existing . . . relationship" between two co-conspirators, in this case, informed by communications and travel close in time to firearms purchases, can "further[] the jury's understanding of how the instant [offense] came about and their role in it." *Roldan-Zapata*, 916 F.2d at 804.

Vereen's seven-month history of purchasing firearms from May to November 2020 provides important context for the conspiracy in which both Vereen and the defendant funneled handguns from South Carolina to New York. The purchase of the Vereen Guns, when combined with the patterns of (i) communication between Vereen and the defendant, (ii) Vereen's travel, and (iii) cell site location information for Vereen, the defendant, and Bey, is clearly direct evidence of the scope and nature of the conspiracy. The fact of Vereen's gun purchases is a necessary detail, without which the story of the conspiracy is incomplete.

A key issue for the jury to resolve at trial will be knowledge and intent: did the defendant *know* that the firearms that he received in New York state were coming from outside New York state, or, at minimum, did he consciously avoid learning that fact? To the extent that the defendant intends to argue at trial that he did not know that he was receiving guns that had originated from South Carolina, his familiarity with Vereen, and the timing and circumstances of their meetings as

it relates to Vereen's firearms purchases, is probative of the defendant's mental state and knowledge of the unlawfulness of his actions, and tends to negate a defense of mistake or absence of knowledge.  *See United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994).

Finally, the probative value of the evidence of the purchase of the Vereen Guns is high and is "not substantially outweighed by the risk of unfair prejudice."  Fed. R. Evid. 403.  Vereen's gun purchases—which are largely of the same types of guns the defendant was arrested with—are at the heart of the offenses with which the defendant is charged and present no risk of unfair prejudice. All relevant evidence is to some degree prejudicial; *unfair* prejudice means, however, an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, Advisory Comm. Note; *see United States v. Herron*, No. 10 Cr. 615 (NGG), 2014 U.S. Dist. LEXIS 63872, at *13–14 (E.D.N.Y. May 8, 2014) (describing examples of unfair prejudice including evidence that appeals to the jury's sympathies, arouses jurors' sense of horror, and provokes a jury's instinct to punish).  There is nothing particularly disturbing about the facts of Vereen's firearms purchases, including the type of firearms purchased, even if intended for others, that would tend to "suggest a decision on an improper basis."  Fed. R. Evid. 403, Advisory Comm. Note.

### 2.    Evidence of The Massachusetts Arrest Is Admissible

With regard to the Massachusetts Arrest, the Government intends to prove at trial that Firearm-2, purchased by Vereen, was one of the firearms seized as part of the Massachusetts Arrest, and that their co-conspirator Bey was arrested alongside the defendant.  The Government also intends to introduce body-worn camera footage obtained from a camera worn by Jamal Latimer, who was also arrested with the defendant and Bey at that time.  This footage captured statements made by the defendant during the stand-off regarding his knowledge of the origin of

the firearms in the CCs' possession.  (*See* Ex. A).  Finally, the Government also intends to offer certain evidence from cellphones seized at the time of the Massachusetts Arrest, including communications that show efforts to plan "Operation Fountainhead" and obtain firearms, as well as the extent of the relationship between the defendant and the rest of the CCs.  (*See* Exs. B–F). The proffered evidence as to the Massachusetts Arrest is admissible first and foremost as direct evidence of the conspiracy because it is, in large part, "inextricably intertwined with the evidence regarding the charged offense," and/or is "necessary to complete the story" of the crime on trial. *Carboni*, 204 F.3d at 44 (internal quotation marks omitted).

The circumstances of the Massachusetts Arrest serve as key evidence of the defendant's agreement with at least two co-conspirators,  Bey and Latimer, to commit the charged offense.  As described above, during Vereen's multiple trips in the fall of 2020, Bey did not communicate directly with Vereen, but instead frequently used the defendant as an intermediary.  The defendant, however, communicated with Vereen—a fact that will allow the jury to infer that the defendant was the intermediary helping to facilitate Bey's purchase of out-of-state firearms,[7] as well as his own.  The defendant thus promoted the receipt and transfer of straw-purchased firearms in furtherance of the conspiracy.

The Massachusetts Arrest also provides evidence of the defendant's role in the conspiracy and his own knowledge of the source of the firearms he and others possessed at the time of the arrest.  For example, Latimer's body-worn camera shows that during the standoff with law enforcement, in the course of a discussion about law enforcement's attempt to convince the CCs to surrender their firearms, Latimer confirmed with the defendant, who was wearing camouflage and body armor, and another one of the CCs, "nothing's stolen right?"  The defendant shook his

---

[7] Bey was also a resident of New York State during the relevant time period.

12

head, indicating his knowledge of how the firearms were obtained, *i.e.*, that they were purchased and not stolen. (Ex. A, 0:30–0:38). Shortly thereafter, the defendant confirms that "everything is clean," meaning that the firearms were not stolen. (Ex. A, 1:30–1:42). This response is direct evidence of the defendant's involvement in a conspiracy to receive the straw-purchased firearms.

Evidence from the cellphones of the CCs arrested with the defendant contain additional evidence of the conspiracy. For example, the phones feature a group text with individuals who planned to attend Operation Fountainhead. In this group text, Latimer, the group leader, circulated a packing list for Operation Fountainhead, which included firearms, ammunition, and other military equipment, and the group discussed their plans to engage in training modeled after the military. (Ex. B at 4–6). In his phone, Latimer also had a note entitled "Operation Fountain Head. 7/3 – 7/7, Plan of execution," which sets forth the expected timeline and tasks for the training, including "[g]o over safety brief for if we are pulled over" and establish "weapon safety rules." (Ex. E at 1). In addition, in the group text, Latimer said they could use "blank-firing-adapters for your training event in July" to "practice firing and maneuvering against each other. Practice ambushes, assault fighting positions etc."[8] (Ex. C at 11).

In the group text, they also discussed the defendant's arrest with Firearm-1, including updates as to his bail status and processing, and their views on the enforcement of gun laws in New York. (*See* Ex. D). Even though the defendant was not participating in the text thread, the messages of the other CCs discussing the defendant and his pending criminal case shows the nature of their relationship with the defendant, and their interest in the outcome of his arrest. These texts are "necessary to complete" the story because they show the defendant's connection to the CCs

---

[8] Consistent with the text messages, Latimer's cellphone contains search history that reveals contemporaneous efforts to research out-of-state purchase of firearms, purchase of firearms supplies, and military tactics. (*See* Ex. F).

and provide an explanation as to why the defendant had firearms just two weeks after being arrested with Firearm-1.  Quite simply, he needed the firearm to attend the miliary training exercise with the CCs.

Similarly, and in the alternative, the above evidence is admissible under Rule 404(b) to show intent, knowledge, motive, common plan and scheme, and absence of mistake or accident. The above-proffered evidence rebuts any argument that the defendant did not intend to receive guns from out of state, that he did not understand the origins of such firearms, or that his possession of a gun purchased by Vereen in South Carolina during the Bronx arrest was simply a mistake.  It shows that on multiple occasions, the defendant was in possession of firearms purchased by Vereen, that he knew where the firearms came from, and that he and the other CCs had a clear motive for purchasing these firearms in order to be prepared for their military-style training.  As a result, with proper limiting instructions, this evidence is admissible under Rule 404(b).

Offering evidence from the Massachusetts Arrest would not violate Rule 403.  As the Second Circuit has recognized, any evidence that is probative of guilt—as the Massachusetts Arrest undoubtedly is—may be prejudicial to the defendant.  *See Gelzer*, 50 F.3d at 1139.  But the Massachusetts Arrest evidence is not *unduly* prejudicial.  The Government presently intends to offer, in addition to officer testimony about the arrest, limited video of the scene, photographs of the firearms seized and individuals arrested, short clips of the Latimer body-worn camera, and small excerpts of evidence from the CCs' phones, all of which are necessary to show the scope of the conspiracy and the defendant's role in obtaining firearms.  Accordingly, the Court should admit evidence of the Massachusetts Arrest.

## II.    Cross-Examination of Law Enforcement Officers About Certain Irrelevant Topics Should Be Precluded

The Government intends to offer evidence of the Bronx Arrest largely through testimony

from NYPD Officer Jarren Smalls, who participated in the arrest of the defendant and the seizure of Firearm-1.  Similarly, the Government expects that law enforcement officers who were on scene at the Massachusetts Arrest will testify about the arrest and the seizure of firearms, including Firearm-2.  In advance of their testimony, the Government seeks to preclude cross-examination regarding (1) Officer Small's prior testimony in a suppression hearing in a wholly unrelated New York State case against a different defendant, and (2) the defendant's lawsuit accusing officers who participated in the Massachusetts Arrest of color-of-law violations.  These lines of cross-examination are irrelevant and would confuse and prejudice the jury.

### A.    Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the right of a defendant in a criminal case to be confronted with the witnesses against him.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *United States v. Maldonado-Rivera*, 922 F.2d 934, 955 (2d Cir. 1990). However, "the scope and extent of cross-examination lies within the discretion of the trial judge." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990).  In this regard, "a trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government."  *Id.* (quotation omitted).

Moreover, cross-examination regarding "specific instances of a witness's conduct" is limited to situations where the conduct of the witness was "probative of the [witness's] character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  Thus, Rule 608(b) "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."  *United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). Further, Rule 608(b) "prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances

of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility' unless that conduct was the subject of a criminal conviction." *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003).

Applying Rules 608 and 403 to cross-examination of law enforcement witnesses, courts have routinely precluded cross-examination about lawsuits that ended without any finding of responsibility. *See United States v. Fernandez*, No. 09 Cr. 1049 (RJS), 2009 WL 10637246, at *2 (S.D.N.Y. Dec. 30, 2009) (rejecting argument that "allegations themselves might still be sufficient to undermine the witnesses' credibility"); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 203 n.2 (E.D.N.Y. 2012) ("[A]ny probative value of the complaints would be substantially outweighed by the danger of unfair prejudice to the Defendant Officers because the lawsuits are mere allegations. . . . "); *United States v. Dekattu*, No. 18 Cr. 474 (ARR), 2019 WL 885620, at *1 (E.D.N.Y. Feb. 22, 2019) (precluding the defendant from cross-examining a police officer about a dismissed lawsuit because "'[t]he existence of a complaint containing unproven allegations' is not probative of [the officer's] truthfulness" (citation omitted)); *Saldarriaga v. United States*, No. 97 Cr. 1275 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) (stating that "[u]nsubstantiated civil rights allegations . . . have no bearing on [an officer's] 'character for truthfulness'" and noting that "[a]ny cross-examination regarding such allegations would have been irrelevant and improper under the Federal Rules of Evidence").

"Further, under [Federal Rule of Evidence] 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Crowley*, 318 F.3d at 417 (quoting *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002)).

16

B.    **Discussion**

1.    **Cross-Examination of Officer Smalls About Prior Suppression Hearing Testimony Should Be Precluded**

As described above, the Government expects to introduce evidence showing that on two occasions, the defendant possessed the Vereen Guns. In order to so prove, the Government will elicit testimony from Officer Smalls, who was present during the Bronx Arrest on June 23, 2021, and seized Firearm-1 from the defendant pursuant to that arrest. The seizure of Firearm-1 was the subject of a suppression hearing held before this Court on May 30, 2023, during which Officer Smalls testified. At the hearing, defense counsel suggested that Officer Smalls may have been tempted to alter his testimony in the instant case to avoid suppression after having testified in an earlier, unrelated case brought by the Bronx District Attorney's Office that he had not seen a "bulge" before stopping an individual suspected of having a gun in a bag. (Dkt. 52 at 28). In that case, the gun was suppressed. (*Id.*) Defense counsel further suggested at the suppression hearing before this Court that, as a result of the outcome in the earlier hearing, Officer Smalls "may have been 'coached' following [the earlier] hearing" that specific testimony—namely, observing bulges before making gun arrests—is "necessary in order to prevent suppression," implying that Officer Smalls would lie under oath in order secure a favorable outcome for the Government. (*Id.*)

Cross-examination related to Officer Smalls' testimony in a prior, unrelated suppression hearing where there was no adverse credibility finding would be based only on defense counsel's unsupported and improper insinuation that Officer Smalls would lie under oath to secure a favorable outcome. Defense counsel's baseless suggestion that Officer Smalls may testify falsely because of the outcome of a separate suppression hearing does little more than to invite the jury to speculate about baseless claims that have no relevance to Officer Smalls' testimony in this case. It may also lead to confusion by the jurors, who may (mistakenly) assume some factual connection

17

between the prior matter, against an unrelated defendant, and the instant prosecution against the defendant.

Insofar as Officer Smalls' previous, unrelated testimony had any relevance, it was for the limited purpose of allowing the Court to evaluate Officer Smalls' testimony regarding the reasonable suspicion to stop and ultimate search of the defendant during the Bronx Arrest. The Court considered Officer Smalls' previous testimony, as well as his testimony at the hearing, and found that Officer Smalls testified truthfully, and had reasonable suspicion to make the stop. The Court therefore denied the defendant's motion to suppress. (Dkt. 52 at 28). Because the legal issue of reasonable suspicion—the only issue for which Officer Smalls' prior testimony was potentially relevant and which the Court has already resolved—will not be before the jury, the defendant should not be permitted to cross-examine Officer Smalls about that testimony.

Further, Officer Smalls' prior testimony does "not actually indicate a lack of truthfulness," as he testified truthfully in the prior case. (Suppression Hearing Tr. at 79) (Q: "The prior case . . . did you testify truthfully during that case?" A: "Yes." Q: Did you testify truthfully in the grand jury in this case?" A: "Yes." Q: "Did you testify truthfully today?" A: "Yes, I did." Q: Would you lie under oath, Officer Smalls?" A: "No."). Allowing the defendant to cross-examine Officer Smalls on prior testimony from an unrelated and irrelevant case in which he told the truth would only serve to confuse the jury and waste time.

### 2.    Cross-Examination of Massachusetts Troopers About the Defendant's Dismissed Lawsuit Should Be Precluded

As discussed above, the Government intends to introduce evidence that the defendant was arrested with Firearm-2, just two weeks after the Bronx Arrest. The Government expects that law enforcement officers involved in the Massachusetts Arrest, including Massachusetts State Trooper Ryan Casey and Trooper Michael Sullivan, will testify, among other things, about the

general circumstances of the traffic stop and subsequent standoff that led to the Massachusetts Arrest; the seizure of firearms, including Firearm-2; and the identities of those arrested.

Shortly after the Massachusetts Arrest, the defendant and others arrested with him filed a lawsuit in the Southern District of Texas against the Massachusetts State Troopers and over twenty other defendants, including Troopers Casey and Sullivan, alleging a "conspiracy against rights, deprivation of rights under color of law, [g]enocide . . . and . . . [t]reason." *See Talib v. Massachusetts*, No. 21 Civ. 2805 (S.D. Tex.) (Dkt. 15 at 2). Based on conversations with Troopers Casey and Sullivan, the Government understands that while Trooper Casey received a summons at some point during the litigation, he was never required to appear, and that Trooper Sullivan was never served or contacted regarding the litigation. The lawsuit was dismissed without prejudice on June 22, 2022. *Id.* (Dkt. 101). Accordingly, there were no findings of wrongdoing or responsibility.

The defendant's lawsuit against the Massachusetts State Troopers is not relevant to Troopers Casey or Sullivan's testimony. Lawsuits are "mere allegations," *Phillips*, 871 F. Supp. at 203 n.2, and as courts have found time and again, dismissed suits are "not probative of [an officer's] truthfulness," *Dekattu*, 2019 WL 885620, at *1. Further, any suggestion of bias based on the lawsuit is minimal given that the suit has been dismissed. Allowing cross-examination about the lawsuit would do little more than to confuse and distract the jury.

## III. Argument That the Defendant's Actions Were or Should Have Been Lawful Under the Second Amendment Should Be Precluded

As the Court is aware, the defendant has argued throughout these proceedings that 18 U.S.C. § 922(a)(3), which he is charged with violating, is unconstitutional. Defense counsel moved pretrial to dismiss the indictment, arguing that the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), rendered Section 922(a)(3)

unconstitutional. (Dkt. 21). The Court denied the motion. (Dkt. 52). Then, on August 11, 2023—
after the Court issued the order denying the motion to dismiss—the defendant filed a *pro se* notice
of interlocutory appeal in which he continued to press his argument that this prosecution is
unlawful because Section 922(a)(3) is unconstitutional. (Dkt. 55; *see id.* at 4) ("I am being charged
with receiving an arm. I am being tried for taking it upon myself to preserve my life which is my
right and my duty to make sure that I prevent anything or anyone from harming me. The crime is
against me.").

At trial, the defendant should not be permitted to relitigate these meritless arguments in
front of the jury by calling into question the constitutionality of the statute under which he is
charged or by attempting to argue that the defendant's gun possession was simply a legal exercise
of his Second Amendment right. *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.
2002) ("when a court has ruled on an issue, that decision should generally be adhered to by that
court in subsequent stages in the same case, unless 'cogent' and 'compelling' reasons militate
otherwise" (citation omitted)). Put differently, the defendant should not be permitted to argue that
he should be acquitted because of an incorrect and unfounded interpretation of the law.

It is clearly settled that legal questions, including matters of constitutional interpretation,
are within the purview of the judge, not a jury. *See Sparf v. United States*, 156 U.S. 51, 72 (1895)
("The judge decides questions of law; the jury questions of fact."); *United States v. Saliba*, 489 F.
App'x 501, 502 (2d Cir. 2012) ("This Court reviews attacks on the constitutionality de novo and
as a question of law."). Here, the jury must decide solely the defendant's "factual innocence" or
guilt "of the crime charged," and the Court alone must determine the constitutionality of Section
922(a)(3). *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997).

Allowing the defendant to make Second Amendment arguments is also plainly improper,

because it would invite, at best, confusion or, more likely, nullification, which is entirely inappropriate. *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent"); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also Sparf*, 156 U.S. at 102 ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." (emphasis in original)). Significantly, the defendant's arguments in his motion to dismiss and his interlocutory appeal do not suggest that the defendant lacked the requisite *mens rea* to commit the offense because of a good-faith misinterpretation of the law. Rather, they demonstrate the defendant's belief that Section 922(a)(3), which proscribes his behavior, is necessarily unconstitutional. Airing such legal argument before the jury can only serve to needlessly prolong the trial, confuse the issues, and invade the province of the Court, which is to provide legal instruction.

21

**CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.


Dated:  New York, New York
        August 14, 2023

                            Respectfully submitted,

                            DAMIAN WILLIAMS
                            United States Attorney

                    By:     s/_____
                            Ashley C. Nicolas
                            Madison Reddick Smyser
                            Sarah Mortazavi
                            Assistant United States Attorneys
                            (212) 637-2467/ -2381/ -2520