UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN PEREZ,
              a/k/a "Lucha,"

                    *Defendant*.

S1 22 Cr. 644 (JSR)

## THE GOVERNMENT'S OPPOSITION TO
## <u>THE DEFENDANT'S MOTIONS *IN LIMINE*</u>

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Ashley C. Nicolas
Madison Reddick Smyser
Sarah Mortazavi
Assistant United States Attorneys
      *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .................................................................................................... 1

    I.     The Court Should Deny the Defendant's Motion to Preclude
Evidence of the Massachusetts Arrest ........................................................ 1

         A.  The Massachusetts Arrest Is Admissible as Direct Proof of
the Charged Crimes......................................................................... 1

         B.  The Massachusetts Arrest Is Admissible in the Alternative
Under Rule 404(b) ......................................................................... 7

    II.    The Court Should Deny the Defendant's Motion to Preclude
Evidence of Vereen's Gun Purchases ........................................................ 10

    III.   The Court Should Deny the Defendant's Motion to Preclude
Evidence of His Lack of a New York Firearms License ........................... 12

    IV.   The Court Should Deny the Defendant's Motion to Preclude
Expert Testimony from Special Agent Lennea Gordon ............................. 14

         A.  SA Gordon's Anticipated Testimony Will Be Relevant and
Helpful to the Jury ......................................................................... 17

         B.  SA Gordon Is Qualified to Provide Expert Testimony........................ 18

         C.  SA Gordon's Anticipated Testimony Is Admissible as Lay
Witness Testimony.......................................................................... 20

CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Costantino v. Herzog*,
    203 F.3d 164 (2d Cir. 2000)................................................................. 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...................................................................... 19

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)................................................................. 13

*United States v. Avenatti*,
    No. 19 Cr. 374 (JMF), 2022 WL 103298 (S.D.N.Y. Jan. 11, 2022)........................................ 16

*United States v. Ayala-Pizarro*,
    407 F.3d 25 (1st Cir. 2005)............................................................ 20

*United States v. Balde*,
    No. 16 Cr. 130 (KPF) (S.D.N.Y. Apr. 6, 2020).......................................... 13

*United States v. Baez*,
    349 F.3d 90 (2d Cir. 2003)............................................................. 8

*United States v. Bryan*,
    524 U.S. 184 (1998)................................................................... 13

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000)............................................................. 2

*United States v. Chan*,
    No. 197 Cr. 1053 (PKL), 2002 WL 46994 (S.D.N.Y. Jan. 14, 2002) ....................... 9

*United States v. De Jesus Sierra*,
    629 F. App'x 99 (2d Cir. 2015) ...................................................... 21

*United States v. Diakhoumpa*,
    171 F. Supp. 3d 148 (S.D.N.Y. 2016).................................................. 20

*United States v. Diaz*,
    176 F.3d 52 (2d Cir. 1999)............................................................ 7

*United States v. Duncan*,
    42 F.3d 97 (2d Cir. 1994) ......................................................................................... 21

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980) ........................................................................................ 6

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005) ...................................................................................... 21

*United States v. Gonzales*,
    110 F.3d 936 (2d Cir. 1997) ................................................................................. 8, 10

*United States v. Hamilton*,
    538 F.3d 162 (2d Cir. 2008) ...................................................................................... 22

*United States v. Livoti*,
    196 F.3d 322 (2d Cir. 1999) ........................................................................................ 6

*United States v. Lopez*,
    547 F.3d 364 (2d Cir. 2008) ...................................................................................... 18

*United States v. Malka*,
    623 F. Supp. 3d 306 (S.D.N.Y. 2022) ....................................................................... 12

*United States v. Martoma*,
    No. 12 Cr. 973 (PGG), 2014 WL 31213 (S.D.N.Y. Jan. 6, 2014) ............................... 8

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008) ...................................................................................... 18

*United States v. Milstein*,
    401 F.3d 53 (2d Cir. 2005) ........................................................................................ 11

*United States v. Mitchell*,
    328 F.3d 77 (2d Cir. 2003) ........................................................................................ 17

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000) ........................................................................... 9

*United Staes v. Ojeikere*,
    299 F. Supp. 2d 254 (S.D.N.Y. 2004) ....................................................................... 10

*United States v. Phillips*,
    952 F.2d 591 (1st Cir. 1991) ..................................................................................... 17

*United States v. Ray*,

    585 F. Supp. 3d 445 (S.D.N.Y. 2022) ....................................................................... 3

*United States v. Rigas*,

    490 F.3d 208 (2d Cir. 2007) .................................................................................... 22

*United States v. Roldan-Zapata*,

    916 F.2d 795 (2d Cir. 1990) ...................................................................................... 6

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*,

    828 F. Supp. 2d 698 (S.D.N.Y. 2011) .................................................................... 21

*United States v. Santiago*,

    199 F.Supp. 2d 101 (S.D.N.Y.2002) ...................................................................... 19

*United States v. Schwartz*,

    924 F.2d 410 (2d Cir. 1991) .................................................................................... 18

*United States v. Thomas*,

    116 F.3d 606 (2d Cir. 1997) .................................................................................... 13

*United States v. Towne*,

    870 F.2d 880 (2d Cir. 1989) ...................................................................................... 8

*United States v. Williams*,

    506 F.3d 151 (2d Cir. 2007) .................................................................................... 19

*United States v. Yannotti*,

    541 F.3d 112 (2d Cir. 2008) .................................................................................... 21

## Statutes

18 U.S.C. § 922(a)(3) ............................................................................... 1, 12, 13, 17

18 U.S.C. § 922(g)(5) ....................................................................................... 14

## Rules

Fed. R. Evid. 401(a) ............................................................................................... 3

Fed. R. Evid. 404(b)(3)(A) ..................................................................................... 8

Fed. R. Evid. 701 ............................................................................................. 20, 21

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motions *in limine* filed by defendant Steven Perez, a/k/a "Lucha," to preclude the Government from introducing (i) evidence of the defendant's July 3, 2021 arrest in Massachusetts, (Dkt. 56 ("Def. Mot.") 2–11); (ii) evidence of gun purchases made by Keith Vereen, the defendant's co-conspirator, from in or about May 2020 through in or about November 2020, (*id.* at 11–13); (iii) evidence of the defendant's lack of a New York State firearms license, (*id.* at 13–14); and (iv) testimony from Special Agent Lennea Gordon, one of the Government's proposed expert witnesses, (*id.* at 14–19). For the reasons set forth below, these motions are without merit, and should be denied.

## ARGUMENT

### I.    The Court Should Deny the Defendant's Motion to Preclude Evidence of the Massachusetts Arrest

The defendant argues that the Government should be precluded from introducing any evidence of his July 3, 2021 arrest in Massachusetts (the "Massachusetts Arrest") because it is "not relevant to whether Lucha unlawfully received a firearm in his state of residence" and is unduly prejudicial. (Def. Mot. 2). But as set forth in the Government's motions *in limine*, evidence of the Massachusetts arrest is crucial direct evidence that the defendant participated in a conspiracy to violate 18 U.S.C. § 922(a)(3). (*See* Dkt. 57 ("Gov't Mot.") 11–14). Evidence of the Massachusetts Arrest is admissible in the alternative under Rule 404(b).

#### A.    The Massachusetts Arrest Is Admissible as Direct Proof of the Charged Crimes

As described in the Government's motions *in limine*, the circumstances of the Massachusetts Arrest are direct evidence of the defendant's participation in a conspiracy to unlawfully receive firearms that were obtained outside of New York, as they are "inextricably

intertwined" with, and help "complete the story" of, this conspiracy.  *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citation omitted).  During the July 3, 2021 Massachusetts Arrest, the defendant, as well as eight others (the "co-conspirators" or "CCs") were driving from Rhode Island to "Operation Fountainhead" in Maine to engage in military training exercises.  Law enforcement officers approached the defendant and his co-conspirators while their vehicle was pulled over on I-95, intending to render assistance.  The encounter then turned into an armed standoff when the defendant and the CCs refused to disarm, ultimately resulting in their arrest.  One of the CCs was Lamar Dow, a/k/a "Jamil Bey" ("Bey"), a New York resident who, like the defendant, sent money to Vereen before Vereen purchased firearms in South Carolina and traveled to New York, and who communicated with the defendant around the time of these trips.  Following the arrest, Massachusetts law enforcement seized over ten firearms, including one purchased by Vereen ("Firearm-2"); over one thousand rounds of ammunition; over two dozen magazines; a number of ballistics vests, including from the defendant; and other military equipment.

The Massachusetts Arrest is direct evidence of the charged crimes because it shows (i) the extent of the defendant's relationship with Vereen and his collaboration with Vereen as a reliable source of guns; (ii) the scope of the conspiracy, including the defendant's relationships with other co-conspirators, such as Bey; and (iii) the defendant's motive for obtaining guns—namely, to bring the firearms to Operation Fountainhead to engage in military training exercises with the other CCs. (*See* Gov't Mot. at 12–14).

The defendant argues that evidence from the Massachusetts Arrest is not admissible for a variety of reasons.  First, he claims that such evidence is not relevant to either of the charged crimes.  (Def. Mot. 4–5).  That contention is patently wrong.  Under Federal of Evidence 401, evidence is relevant if "it has *any* tendency to make a fact more or less probable than it would be

without the evidence" and "the fact is of consequence in determining the action," Fed. R. Evid. 401(a)–(b) (emphasis added)—which is a "relatively low bar." *United States v. Ray*, 585 F. Supp. 3d 445, 459 (S.D.N.Y. 2022) (citation omitted).   Evidence from the Massachusetts Arrest, including the seizure of a firearm purchased by Vereen, and the defendant and Bey's role in obtaining firearms for the CCs, as evidenced through their interactions during the standoff, clears that low bar, insofar as it has a tendency to make it more probable that the defendant agreed with others to receive firearms in resident states that were obtained by Vereen in South Carolina, and subsequently transported.  Further, evidence that the defendant was arrested on two occasions with guns he had obtained from Vereen tends to show the extent of the defendant's relationship with Vereen, his knowledge of where the guns were sourced, and his indifference to the legality of the manner in which he obtained the firearms.

The defendant further claims that evidence of the Massachusetts Arrest is not relevant because "the government does not claim that [the defendant] joined a conspiracy to form a militia or a conspiracy to possess firearms," and because there is no evidence that the defendant or others arrested in Massachusetts were residents of that state.  (Def. Mot. 4–5).  But in fact, the defendant is charged with a conspiracy: Count One of the Superseding Indictment charges the defendant in a conspiracy to "transport into and receive in the State in which a person resided firearms purchased . . . outside that State" without the proper licenses.  (Dkt. 54 ¶ 2).  And the circumstances of the Massachusetts Arrest and the preparation and attempted execution of "Operation Fountainhead" are direct proof of the existence of the charged conspiracy, the defendant's need for guns, and the defendant's willingness to help others like Bey obtain guns from other states, all of which are germane to Count One.  Further, in light of the circumstances of the defendant's arrest in the Bronx in possession of Firearm-1, the defendant's coordination with the CCs to transport

Firearm-2, which was similarly purchased by Vereen in South Carolina, is persuasive evidence that the defendant had earlier received that firearm in New York—his state of residency—and traveled with it to Massachusetts.  The Government need not demonstrate that the CCs were residents of Massachusetts in order to show the relevance of the Massachusetts Arrest to the charged conspiracy.

The defendant further claims that "none of the Massachusetts firearms are at issue in this case," (Def. Mot. 4), and that there was no "connection between any of the firearms recovered during the arrest and" the defendant, (*id.* at 6),[1] an argument that simply misapprehends the Government's proof.  Firearm-2 is direct evidence of the defendant's participation in a conspiracy to obtain firearms from out-of-state, given that Firearm-2, like Firearm-1, was obtained from Vereen, the defendant's contact and straw purchaser who frequently communicated with the defendant, received money from the defendant, and had met with the defendant after purchasing guns in South Carolina and traveling to New York.  Moreover, the other firearms recovered during the Massachusetts Arrest are helpful conspiracy evidence.  For example, the Government expects the evidence at trial will show that, during the standoff in Massachusetts, the group's leader, Jamal Latimer, a/k/a "Jahmal Abdullah Bey" ("Latimer"), asked the defendant and Bey if the group's guns were "stolen," and the two confirmed they were not.  (*See* Gov't Mot., Ex. A at 0:30-0:38).  This interaction shows that (i) the defendant and Bey had obtained the guns for the group, and (ii)

---

[1] To the extent the defendant is arguing that none of the firearms seized in Massachusetts are "connected" to him because he was not carrying a firearm at the time of his arrest, that claim is misleading.  Body camera footage from Jamal Latimer, a/k/a "Jahmal Abdullah Bey," shows that the defendant handled multiple guns during the standoff.  (*See* Ex. A).  The same is true of other CCs, indicating that these guns were communal guns to be shared among the CCs.  That the defendant was unarmed when he surrendered following the standoff is inapposite given that the defendant and the CCs were instructed to leave their firearms, including Firearm-2, in their vehicles.

the defendant knew that the guns had been purchased from a store, and not "stolen" from an individual. This interaction indicates that the defendant and Bey had obtained the other seized guns in the same manner in which the defendant obtained Firearm-1 and Firearm-2.

The defendant separately argues that all evidence of the Massachusetts Arrest should be precluded as prejudicial under Rule 403, claiming that this evidence is "minimally probative" because none of the guns were "traced" to New York and "only one firearm" (*i.e.*, Firearm-2) was connected to Vereen, and that such evidence otherwise risks turning this case into a "'multi-ringed sideshow of mini-trials on collateral issues' of the still-pending Massachusetts action against Lucha."[2]  (Def. Mot. 7–10).

The evidence, however, has significant probative value.  Despite the defendant's contention that the seized firearms cannot be "traced" to New York, the defendant's possession of these firearms in Massachusetts, particularly Firearm-2, tends to prove that he and Bey—both New York State residents who apparently sourced these firearms for Operation Fountainhead—received the guns in New York before traveling with them to attend Operation Fountainhead.  Further, the defendant cannot diminish the substantial probative value of Firearm-2 by simply stating that it was the "only" firearm purchased by Vereen.  The fact that *any* firearm purchased by Vereen was seized during the Massachusetts Arrest is important proof that the defendant was engaged in a conspiracy to obtain firearms from outside his state of residence.

In addition, the Government does not intend to create a "mini-trial" about the Massachusetts Arrest, nor to unnecessarily dwell on the footage of the arrest.  Rather, the

---

[2] The Court should place limited weight on the fact that the defendant's Massachusetts charges are still pending.  The trial in Massachusetts has been adjourned because of the defendant's actions, even after this trial was adjourned in order to accommodate a May trial date in Massachusetts.

Government intends to introduce a limited, targeted set of evidence from the arrest, including less than five minutes of excerpted body-worn camera ("BWC") footage from a responding officer; less than five minutes of excerpted BWC footage from a co-conspirator, which captures statements from the defendant relevant to the charges; physical evidence seized from the scene; a small number of photographs from the scene; and evidence from several cellphones seized from the scene. Further limiting potential prejudice, the Government intends to introduce evidence of the peaceful resolution of the standoff, and does not intend to put at issue the ideology of those traveling with the defendant beyond what is captured on BWC footage and is on the cellphones.

Given the planned use of this evidence, its probative value is not substantially outweighed by its risks. All evidence of guilt is prejudicial to some extent, but preclusion under Rule 403 demands that proof be "*unfairly*" prejudicial. *Costantino v. Herzog*, 203 F.3d 164, 175 (2d Cir. 2000); *see United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence"). Evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (noting that evidence is not unduly prejudicial under Rule 403 when it is not "more inflammatory than the charged crime[s]"). The Massachusetts Arrest evidence is powerful proof of the charged crimes, for the reasons described above, and the nature of the event is no more prejudicial than the gravamen of the charges, namely, transporting, and conspiring to transport, firearms across state lines.

Further, as noted above, the Government's evidence does not purport to suggest that the defendant or the CCs opened fire or engaged in any acts of violence, beyond their refusing to

disarm, nor does the Government seek to introduce "irrelevant and inaccurate evidence concerning the beliefs" of the defendants and the CCs. (Def. Mot. at 7–8). Far from a sideshow, the facts of the Massachusetts Arrest, including who was arrested, what was recovered, and what was communicated, are key to proving the defendant's participation in the conspiracy. Indeed, the proffered evidence here is far *less* prejudicial than that previously approved by the Second Circuit. *See United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (permitting Government to offer evidence of the defendant's gang affiliation because such evidence would "help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed" (citation omitted)).

### B.    The Massachusetts Arrest Is Admissible in the Alternative Under Rule 404(b)

In the alternative, evidence of the Massachusetts Arrest is admissible under Rule 404(b) to show his intent, knowledge, motive, common plan and scheme, and absence of mistake or accident with respect to each of the charged offenses. As described in the Government's motions *in limine*, this evidence shows that the defendant intended to receive guns from out of state, that he understood the origin of those guns, and—as relevant to the substantive charge—that his possession of a gun ("Firearm-1") in the Bronx from Vereen was not a mistake. (Gov't Mot. 14).

The defendant argues that proof of the Massachusetts Arrest, to the extent it is not direct evidence, should be separately precluded under Rule 404(b) because it was improperly noticed. (Def. Mot. 10–11). This is hardly a basis for preclusion. First and foremost, as laid out in the Government's Rule 404(b) notice, its motions *in limine*, and in the arguments herein, evidence of the Massachusetts Arrest is direct evidence of the charged conspiracy, and the Court should admit

it on that basis.[3]  "[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under [Rule] 404(b) if it 'arose out of the same transaction or series of transaction as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'"  *United States v. Gonzales*, 110 F.3d 936, 942 (2d Cir. 1997) (brackets omitted) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)).  That is particularly true in conspiracy cases, where the Second Circuit has held that "admission of evidence of uncharged criminal activity is not considered other-crimes evidence subject to [Rule] 404(b)."  *United States v. Baez*, 349 F.3d 90, 93–94 (2d Cir. 2003).  As the Government stated in its Rule 404(b) notice, the Massachusetts Arrest evidence "is admissible as direct evidence of the charged offenses because, among other reasons, it bears directly on the scope of the defendant's conduct and his agreement with others to commit the crimes, as well as his intent," and it provides "necessary background and context of the relationship between members of the conspiracy and the charged offenses."  (Def. Mot., Ex. A at 1).

The Government's notice to the defendant stated that the Massachusetts arrest was direct proof of the charged conspiracy, but acknowledged, in an abundance of caution, that the arrest was nonetheless admissible under Rule 404(b) as evidence of the defendant's "motive, intent, plan, knowledge, absence of mistake, or lack of accident[.]"  (Def. Mot., Ex. A at 1–2).  That notice was sufficient for Rule 404(b) purposes.  Rule 404(b) requires only that the Government provide "reasonable notice" of evidence it intends to offer, "so that the defendant has a fair opportunity to meet it."  Fed. R. Evid. 404(b)(3)(A).  "[R]easonable notice" under the rule is "determined by the circumstances of the case[,]" *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31213,

---

[3] The Government reiterated its view that the Massachusetts Arrest evidence was direct evidence of the charged crimes in a phone call with defense counsel on or about August 4, 2023.

at *2 (S.D.N.Y. Jan. 6, 2014) (citation omitted), and such a determination is committed to the Court's sound discretion, *United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000). The Government's Rule 404(b) notice was reasonable here.  It identified the evidence that the Government may offer under the rule, specifically, evidence related to the defendant's July 3, 2021 arrest in Massachusetts with the CCs, including the firearms, ammunition, and other military items that the group possessed during the standoff.  (Def. Mot., Ex. A at 1).  The notice also identified the purposes for which the Government may seek to offer the evidence, including to show the defendant's opportunity, intent, plan, knowledge, absence of mistake, and lack of accident.  (*Id.*).

The defendant takes issue with the fulsome nature of the Government's notice, arguing that the notice cites "nearly every purpose in the Rule." (Def. Mot. at 10).  A multi-pronged enumeration of the Government's reasons for offering "other acts" evidence is no reason to find the notice deficient.  This is particularly so given that the Government's motivation for offering evidence "often changes as the proof crystallizes or as possible defenses are revealed at trial." *United States v. Chan*, No. 197 Cr. 1053 (PKL), 2002 WL 46994, at *2 (S.D.N.Y. Jan. 14, 2002) (internal quotation marks and citation omitted) (opining in the context of the "timetable" for providing Rule 404(b) notice).  The Government's notice, which was provided approximately one month before trial, provided the defendant with a reasonable opportunity to meet the evidence, as required under the rule.  In light of the challenges in anticipating all purported defenses at trial, expansive notice is no basis to reject otherwise-admissible evidence.

To the extent the notice was deficient, the defendant has suffered no prejudice.  In the Government's motions *in limine*, the defendant received an even more fulsome articulation of the evidence the Government intends to introduce at trial, the purposes for which it will offer that evidence under Rule 404(b) if such evidence is not admitted as direct evidence, and the reasons

why the evidence serves such purposes under Rule 404(b).  (*See* Gov't Mot. at 14).  These motions were filed two weeks before trial, and "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)."  *United Staes v. Ojeikere*, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004).

In sum, proof of the Massachusetts Arrest should be admitted at trial.

## II.   The Court Should Deny the Defendant's Motion to Preclude Evidence of Vereen's Gun Purchases

The defendant argues that the Court should preclude evidence that Vereen, the defendant's co-conspirator, purchased approximately 25 guns in South Carolina from in or about May 2020 through in or about November 2020.  (Def. Mot. 11–13).  Like the Massachusetts Arrest, evidence of Vereen's gun purchases is admissible as direct evidence.  Alternatively, it is admissible under Rule 404(b) to show the defendant's knowledge and intent.

As set forth in the Government's motions *in limine*, the full extent of Vereen's gun purchases is admissible as direct evidence because it "arose out of the same transaction or series of transactions as the charged offense," is "inextricably intertwined with the evidence regarding the charged offense," and is "necessary to complete the story of the crime on trial."  *Gonzalez*, 110 F.3d at 942 (brackets omitted) (quoting *Towne*, 870 F.2d at 886); (*see also* Gov't Mot. 7–10). Between September 2020 and November 2020, Vereen took four round-trips between New York and South Carolina.  Before each of these trips, he purchased firearms in South Carolina.  Shortly thereafter, he traveled to the Bronx, and during those trips, he often communicated with the defendant.  Cellsite location information establishes that Vereen met with the defendant and, at times, Bey, in New York.  The evidence therefore shows that these firearms purchases and four subsequent trips were to deliver firearms to the defendant and/or Bey; consequently, evidence of Vereen's purchases immediately before these trips is directly relevant to establishing the extent of

Vereen's relationship with the defendant, the manner in which the defendant procured firearms, and the scope of the conspiracy.

The Government further intends to argue that trial that Vereen's earlier firearms purchases are similarly proof of the charged conspiracy. As argued above, the defendant was found in possession of Firearm-2, a gun that Vereen had purchased on or about July 23, 2020, indicating that the defendant was procuring firearms from Vereen months before the four aforementioned trips to New York. In light of this, the jury can certainly infer from this evidence that Vereen's firearms purchases were for the defendant, Bey, or other CCs. *See United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005) ("Foreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators[.]").

The defendant further argues that the introduction of Vereen's gun purchases is "irrelevant to the critical issue of whether Lucha willfully received firearms purchased by Vereen in his state of residence." (Def. Mot. 12). However, Vereen's status as a straw purchaser who made extensive unlawful gun purchases over the course of seven months goes directly to the issue of willfulness. That the defendant used a straw purchaser such as Vereen in order to purchase firearms from out of state and transport them to New York is powerful evidence that the defendant knew his receipt of these firearms was unlawful. Rather than obtaining the firearms himself from within New York State, the defendant enlisted Vereen, who lived hundreds of miles away, to buy firearms for the defendant and travel across multiple states to deliver them. Vereen's role as a straw purchaser for the defendant, Bey, and perhaps other CCs helps explain the service he provided within the conspiracy.

In addition, as explained in the Government's motions *in limine*, evidence of Vereen's gun purchases is alternatively admissible under Rule 404(b) to show the defendant's knowledge and

intent. (Gov't Mot. 10–11). Given the pattern the evidence will establish, namely, that Vereen's gun purchases in South Carolina are followed by trips to New York and meetings with the defendant, these purchases tend to rebut any argument that the defendant was unaware of the source of the firearms, or that obtaining them through an out-of-state straw purchaser was unlawful. The jury can infer from the pattern of the purchases and the trips, as well as the multiple instances in which the defendant was arrested with a gun purchased by Vereen, that the defendant knew—or at minimum, consciously avoided learning—the manner in which Vereen acquired and transported these guns.

The defendant separately argues that evidence of Vereen's gun purchases is unduly prejudicial as to the defendant because the jury could convict the defendant "solely on the basis of Vereen's conduct, rather than his own conduct." (Def. Mot. 12). That argument is baseless. As discussed above, simply because evidence is prejudicial does not mean it is *unduly* prejudicial. Proof of the activities of a member of a charged conspiracy are persuasive proof regarding the existence of the conspiracy. To the extent Vereen's actions are foreseeable to the defendant, the jury may properly consider that proof when rendering its verdict on Count One of the Indictment. *See United States v. Malka*, 623 F. Supp. 3d 306, 326 (S.D.N.Y. 2022).

### III.    The Court Should Deny the Defendant's Motion to Preclude Evidence of His Lack of a New York Firearms License

The defendant argues that the Court should preclude any evidence that the defendant did not possess a New York State firearms license at the time he was arrested with Firearm-1 in or about June 2021. (Def. Mot. 13–14). He claims that this evidence is irrelevant and unduly prejudicial because it does not establish knowledge that receiving firearms into his state of residence without being a licensed distributor, manufacturer, or collector of firearms, as criminalized by 18 U.S.C. § 922(a)(3), was unlawful. But the defendant's lack of a New York

firearms license is relevant to the defendant's motive for procuring firearms from South Carolina and knowledge that obtaining those firearms was unlawful.

Section 922(a)(3) requires that a defendant's receipt of firearms from outside his state of residence be willful.  *See* 18 U.S.C. §§ 922(a)(3), 924(a)(1)(D); *see also United States v. Bryan*, 524 U.S. 184, 196 (1998) (Section 924(a)(1)(D) requires "knowledge that [a defendant's] conduct is unlawful").  The defendant's motions *in limine* make clear that the defendant's intent will be at issue in this trial.  (*See* Def. Mot. 13–14).  Although the defendant is not charged with unlawfully possessing a firearm, his lack of a New York firearms permit explains why the defendant had to unlawfully obtain firearms using an out-of-state straw purchaser, rather than purchasing firearms in a New York gun store.

The defendant alternatively argues that introducing evidence that he lacked a New York firearms license necessarily entitles him to discuss constitutional challenges to New York's licensing scheme.  (Def. Mot. 14).  The Court should not allow this.  The Supreme Court case that invalidated New York's licensing scheme, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), had not yet been decided at the time of the charged crimes.  Consequently, *Bruen* is wholly irrelevant to the defendant's state of mind at the time he committed the offense.  Moreover, *Bruen* relates to a legal issue that is not properly before the jury, as argued in the Government's motion *in limine*.  (*See* Gov't Mot. 19–21).  Allowing such argument would be extremely confusing to the jury and may improperly invite juror nullification, which is entirely inappropriate.  *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997).

The defendant's reliance on the pre-trial ruling in *United States v. Balde*, No. 20 Cr. 281 (KPF) (S.D.N.Y. Dec. 27, 2022), is unavailing.  (Def. Mot. 13).  In that case, the defendant was charged with having possessed a gun as an alien illegally and unlawfully in the United States, in

violation of 18 U.S.C. § 922(g)(5). *Balde*, No. 20 Cr. 281 (Dkt. 1). The Government sought to introduce evidence that the defendant had never applied for a license to show the defendant's knowledge that such application would be futile because he was an unlawful alien. In other words, the lack of a license showed that the defendant knew that he was an unlawful alien. The Court there held that there were "many potential reasons" for Balde's failure to apply for a license that were not related to his immigration status. *Balde*, No. 20 Cr. 281 (Dkt. 151 at 30). The Court therefore found that the licensing evidence was indicative of Balde's knowledge of his immigration status "via a series of inferences that . . . are simply too attenuated to be appropriately probative." (*Id.*).

This case is different from *Balde*. Here, the defendant's lack of a New York firearm license shows that the defendant could not legally purchase firearms himself in New York State. Unlike *Balde*, this logic is not attenuated and does not require a series of inferences. It is instead a direct cause and effect. And the fact that the defendant could not purchase firearms himself, in New York State, is of course relevant to explain why he instead illegally sourced his guns from an out-of-state straw purchaser.

For these reasons, the defendant's lack of a New York State firearms license may be properly admitted at trial.

## IV.   The Court Should Deny the Defendant's Motion to Preclude Expert Testimony from Special Agent Lennea Gordon

At trial, the Government intends to offer testimony from Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Lennea Gordon ("SA Gordon"). As more particularly described below, and as explained in the Government's notice to the defense, SA Gordon will offer testimony that reflects her experience as a trained ATF investigator and law enforcement officer regarding:

[T]he process by which firearms can be purchased—lawfully and otherwise—including but not limited to the mechanics of a firearms transaction, the administration of the ATF Form 4473, bookkeeping requirements for Federal Firearms Licensees ('FFLs'), and the concept of straw purchasing.  In addition, SA Gordon will testify about the ATF firearms tracing process and the licensure of firearms dealers.

(*See* Def. Mot., Ex. E. (Gov't Expert Notice)).

The defendant seeks to preclude the proposed expert testimony of SA Gordon on two grounds: first, because the topic of the noticed expert testimony is "irrelevant and unduly prejudicial"; and, second, because SA Gordon is supposedly not qualified to provide expert testimony.  (*See* Def. Mot. 14–19).  The defendant separately requests a *Daubert* hearing to determine the reliability of SA Gordon's conclusions.  (*Id.* at 16).

As described below, much of SA Gordon's testimony includes background information on the firearms-purchasing regime in the United States, informed by her training and experience as a law enforcement officer, which does not necessarily require that SA Gordon be qualified as an expert witness.  Specifically, the Government expects that SA Gordon will testify to the following:

1. Businesses and individuals must be certified as Federal Firearms Licensees ("FFLs") before selling guns as a business in the United States. FFLs are issued and tracked by the ATF.

2. FFLs are required to follow particular state and federal procedures when selling firearms. Federal procedures include checking for a state identification card and administering ATF Form 4473 (Firearms Transaction Record) (the "Form 4473"). State requirements vary from state to state and while states can add to federal requirements, they cannot subtract.

3. The Form 4473 must be completed at the time of every firearm purchase completed at an FFL and requires that the purchaser make certain statements under penalty of

perjury. In particular, the Form 4473 requires that the purchaser attest that he is purchasing firearms for himself and not on behalf of someone else.

4. The Form 4473 includes a description of the purchased firearms, including the make, model, caliber, and serial number of the purchased guns. A serial number is a unique identifier affixed to a firearm that can be used by the ATF to trace the purchase history of a firearm.

5. In addition to firearms, most FFLs sell ammunition, blank ammunition, and magazines, among other firearm accessories. A blank is a type of ammunition that allows a firearm to function as if it is loaded but without ejecting a projectile.

6. Straw purchasing is the process by which an individual qualified to purchase a firearm does so on behalf of another person by making false statements to the FFL about the true nature of the transaction. Commonly, people employ straw purchasers to evade detection by law enforcement and state authorities when they would be otherwise unable to buy guns for themselves.

This testimony is relevant and not unduly prejudicial, and SA Gordon is well-qualified to give it as an expert. The Court would also be well within its discretion to admit this testimony as lay witness testimony.[4]

---

[4] The Court may also decide that certain of this testimony, in particular topics 1 through 4, should be done by the Court in its jury instructions. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF), 2022 WL 103298, at *2 (S.D.N.Y. Jan. 11, 2022) (gathering cases for the proposition that judges' instructions, not witness testimony, is proper way to instruct the jury on applicable principles of law). If the Court so finds, the Government is prepared to submit a supplemental request to charge.

**A.    SA Gordon's Anticipated Testimony Will Be Relevant and Helpful to the Jury**

As an initial matter, SA Gordon's testimony on the topic of "straw purchasing"[5] —whether or not she is qualified as an expert—is highly relevant and helpful to the jury's understanding of the charged offense.  The defendant is charged with conspiring to violate and violating 18 U.S.C. § 922(a)(3), which makes it a crime to receive in or transport into the state of residency of the transporter or receiver firearms purchased *or otherwise obtained* outside the state of residency of the transporter or receiver.

Often, as is the case here, straw purchasing is at the heart of the conduct underlying a violation of Section 922(a)(3) and is exactly the type of conduct Congress sought to prohibit.  By including the phrase "otherwise obtained" in the statute, Congress "communicated its intent to have the statute's proscription reach beyond straightforward, one-on-one purchases to cover those illegal firearms transactions effected through the use of agents or straw men."  *United States v. Mitchell*, 328 F.3d 77, 81 (2d Cir. 2003).  In *Mitchell*, as in the instant case, an individual (Lotto) paid a straw purchaser (Mitchell) to buy guns out of state and transport them into Lotto's state of residence.  The Second Circuit held that Mitchell conspired with Lotto by acting as Lotto's "out-of-state agent[]" to purchase firearms and that Lotto "otherwise obtained" the guns through the straw purchases, even though he did not directly purchase the guns himself.  *Id.*; *see also United States v. Phillips*, 952 F.2d 591, 593 (1st Cir. 1991).

The defendant's suggestion that testimony about straw purchasing is irrelevant is meritless.  Testimony regarding straw purchasing is particularly relevant in this case with respect to the

---

[5] While the defense has objected to any testimony about the mechanics of "straw purchasing," they have not objected to the use of the term. Accordingly, the Government intends to employ the phrase in its opening remarks and may do so when questioning witnesses.

defendant's willfulness.  That the defendant decided to enlist the aid of the straw purchaser Vereen, an individual willing to lie to gun stores to conceal the unlawful nature of particular gun purchases, rather than purchase a firearm from a local seller, is highly probative of the defendant's state of mind.

SA Gordon will not offer opinion testimony about the defendant's state of mind.  In fact, SA Gordon was not involved in the investigation of this case; rather, she will offer the jury background information, which will assist in the jury's comprehension of other state-of-mind evidence that the Government will admit at trial.

**B.      SA Gordon Is Qualified to Provide Expert Testimony**

SA Gordon is qualified to give expert testimony on the topics of straw purchasing (and its role in the illegal purchase of guns) as well as firearm dealer licensing.  *See, e.g.*, *United States v. Mejia*, 545 F.3d 179, 193–94 (2d Cir. 2008) (discussing the qualifications of a Task Force member as to his knowledge of gang networks); *United States v. Lopez*, 547 F.3d 364, 373 (2d Cir. 2008) (17-year New York City Police Department veteran investigating drug cases was qualified to testify as an expert "in the practices of drug users and dealers").  The decision to admit expert testimony rests with the discretion of the trial court.  *See United States v. Schwartz*, 924 F.2d 410, 425 (2d Cir. 1991).

SA Gordon's qualifications are described in her resume and in supplemental disclosures to the defense.  SA Gordon has been a member of law enforcement for approximately ten years— first as a special agent with the Diplomatic Security Service ("DSS") and then with the ATF.  In these roles, SA Gordon has handled firearms nearly every day for the past decade.  As a DSS special agent, SA Gordon received training and instruction on a variety of different weapons— including of the type at issue in this case—and was ultimately responsible for firearms training for United States personnel assigned to particular foreign posts.  Since becoming an ATF special

agent, SA Gordon has received many hours of classroom instruction, including instruction at the ATF Special Agent Basic Training course on the topics of gun trafficking and straw purchasing.[6] SA Gordon was first assigned to San Diego where she worked primarily on cases involving cross-border gun trafficking.  Since being assigned to New York, SA Gordon has worked in the New York Gun Crime Intelligence Center, where she has focused on using the ATF's investigative tools to identify straw purchasers and gun trafficking cells in New York City.  Currently, SA Gordon serves as an agent with the New York Field Office, where she primarily investigates gun trafficking cells in New York who use straw purchasers in Southern states to funnel firearms into New York City.  By virtue of her current professional experience, including as a Special Agent in the ATF, SA Gordon has gained familiarity with the U.S. firearms licensing regime, and the means by which individuals circumvent that regime. Her experience and training establish that she is amply qualified to testify regarding the topics outlined above.

The defendant argues that, should the Court construe SA Gordon's proposed testimony as expert testimony under Rule 702, a hearing should be held to "determine the reliability of [SA] Gordon's conclusions."  (Def. Mot. 16).  No such hearing is necessary.  The Court possesses "latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (emphasis omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  In the course of her proposed testimony, SA Gordon will not be asked to rely on any particular scientific methods or complex methodology that would require vetting

---

[6] *Special Agent Training*, ATF: Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/careers/special-agent-training (last visited Aug. 21, 2023) (discussing the training provided to ATF trainees during the Special Agent Basic Training Course).

through a pretrial *Daubert* hearing.  *See United States v. Santiago*, 199 F. Supp. 2d 101, 112 (S.D.N.Y.2002) (finding that a *Daubert* hearing was not necessary where a reliability determination could be established through foundation questions at trial and noting that "[c]ounsel for defendants are free to challenge [the witness's] qualifications or his methodology through voir[] dire").  Instead, SA Gordon will be testifying based on knowledge she has gained through her training and experience as a DSS and ATF special agent.  She will also not be asked to provide specific opinions regarding the defendant's conduct—her testimony will instead serve to provide background and context for other evidence at issue in this case.  The written record of her qualifications provides a sufficient basis for the defendant to explore SA Gordon's qualifications, and to the extent he needs any additional information, such concern can be addressed with "additional questioning of the witness at trial."  *United States v. Diakhoumpa*, 171 F. Supp. 3d 148, 153 (S.D.N.Y. 2016).  As such, this Court need not hold a *Daubert* hearing to qualify SA Gordon as an expert.

### C.    SA Gordon's Anticipated Testimony Is Admissible as Lay Witness Testimony

The Court would also be within its discretion to decide that SA Gordon should testify as a lay witness.  As described above, the Government anticipates that much of SA Gordon's testimony will provide important context by broadly describing the firearms purchase process and the paperwork involved in that process, as well as by defining particular terms relating to guns and gun purchases.  SA Gordon's testimony will be informed by her participation in investigations similar to that conducted in this case, including her time assigned to the New York Crime Gun Intelligence Center and her training and experiences as a Diplomatic Security Service Special Agent and ATF Special Agent.  As stated above, she is not expected to opine on the defendant's state of mind or motivation.  Her testimony will include "particularized knowledge that [she] has by virtue of h[er] . . . position" as an ATF special agent. Fed. R. Evid. 701 advisory committee's

note to 2000 amendment; SA Gordon need not be qualified as an expert to offer such testimony under Rule 701. *See United States v. Ayala-Pizarro*, 407 F.3d 25, 27–29 (1st Cir. 2005) (admitting, as lay testimony, the opinion of a police officer as to the operation of "drug points"); *see also United States v. De Jesus Sierra*, 629 F. App'x 99, 102–03 (2d Cir. 2015) (no clear error in admitting, as lay testimony, law enforcement officer's testimony associating physical evidence with drug distribution).

Lay witness opinion testimony is limited by Federal Rule of Evidence 701, which provides that opinion testimony from a lay witness is admissible when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) *not* based on scientific, technical, or other special knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). "[S]ome degree of specific, industry-related knowledge will not disqualify lay opinion testimony." *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 704 (S.D.N.Y. 2011) (citing *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008)). Ultimately, lay witness opinion testimony is admissible so long as it is rationally based on the witness's perception or is the "product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). On the contrary, opinion testimony based on scientific, technical, or other special knowledge is governed by Rule 702 and is only admissible where the witness is first qualified as an expert. Pursuant to Rule 702, expert testimony is admissible if it relates to a specialized area of expertise and will assist the trier of fact to understand the evidence or to determine a fact in issue. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). Unlike a lay opinion, an expert opinion results "from a process of reasoning which can be mastered only be specialists in the field." *Garcia*, 413 F.3d at 215 (citation omitted).

There is no question that SA Gordon has the "personal knowledge" required to provide helpful testimony. Her testimony will be informed by the "reasoning processes familiar to the average person in everyday life," *id.*, rather than the type of "specialized training that scientific witnesses or statisticians rely upon when interpreting the results of their own experiments or investigations," *Yannotti*, 541 F.3d at 126; *see also United States v. Rigas*, 490 F.3d 208, 223, 225 (2d Cir. 2007) (permitting, as lay witness testimony, accounting consultant's highly technical description of organization's fraudulent financial statements where witness's knowledge was based on his review of accounting statements during internal investigation).[7] Accordingly, the Government respectfully submits that SA Gordon's testimony may be properly characterized as lay witness testimony.

---

[7] Even if SA Gordon's testimony were admitted under Rule 702 and later determined to have impermissibly relied upon the kind of "specialized knowledge" contemplated under Rule 703, any error would be harmless as the Government (i) provided notice of SA Gordon's anticipated testimony and (ii) will establish her decade of relevant experience, qualifications, and reliability. *See, e.g.*, *United States v. Hamilton*, 538 F.3d 162, 174 (2d Cir. 2008) (harmless error where, after the Government had established a law enforcement officer's qualifications, his lay testimony impermissibly relied on "specialized knowledge").

## **CONCLUSION**

For the foregoing reasons, the defendant's motions *in limine* should be denied.


Dated: New York, New York
       August 21, 2023


                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney


                              By:    s/_____
                                     Ashley C. Nicolas
                                     Madison Reddick Smyser
                                     Sarah Mortazavi
                                     Assistant United States Attorneys
                                     (212) 637-2467/ -2381/ -2520